UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IVANA FRECH,

        Plaintiff,

    v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

        Defendants.

Civil Action No. 23-2530 (CRC)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

BACKGROUND ............................................................................................................1

I.    Legal Background ...............................................................................................1

II.   Factual and Procedural Background.................................................................3

     A.    The University of Utah's Research Misconduct Investigation of Frech................3

     B.    The Office's Research Misconduct Findings and Frech's Debarment .................5

LEGAL STANDARDS........................................................................................................9

ARGUMENT ..................................................................................................................9

I.    The Debarring Official's Determination That Frech Failed to Demonstrate Present Responsibility Was Not Arbitrary or Capricious ..........................................................10

     A.    Fresh Has Failed to Acknowledge Acting Knowingly and Intentionally ............12

     B.    The Debarring Official's Present Responsibility Finding Was Not Punitive .......13

     C.    The Debarring Official's Finding that Frech's Activities Since Her Misconduct Fail to Demonstrate Present Responsibility Was Not Arbitrary or Capricious.....14

     D.    Defendants Addressed the Time That Elapsed From Frech's Misconduct...........20

     E.    Frech's Argument that Utah's Findings Give Her Reasonable Grounds to Deny that She Acted Knowingly and Intentionally is Meritless...................................23

II.   Frech's Challenges to the Debarring Official's "Sole Responsibility" Finding Fail ........27

     A.    The "Sole Responsibility" Finding Was Not Arbitrary or Capricious.................27

          1.    The Decision to Not Investigate Ward is Committed to Agency Discretion...........................................................................................29

          2.    The Office Had a Legitimate Reason to Investigate Frech But Not Ward ....................................................................................................29

     B.    Any Error in the "Sole Responsibility" Finding Was Harmless .........................30

III.   The Debarring Official's Determination that Frech's Misconduct Was "Serious and Compelling" Enough to Warrant Debarment is Not Arbitrary or Capricious .................31

IV.   The Privacy Act Precludes APA Relief Because It Provides an Adequate Remedy ........33

V.     Frech is Not Entitled to Injunctive Relief ..................................................... 37

      A.     Vacatur is the Only Proper Remedy for an Erroneous Debarment ..................... 37

      B.     Frech Fails to Satisfy Any of the Requirements for Injunctive Relief ................ 38

            1.     Frech Fails to Demonstrate Irreparable Injury ........................................ 39

            2.     Frech Fails to Demonstrate an Inadequate Remedy at Law ..................... 44

            3.     Frech Fails to Demonstrate that the Equities or Public Interest Favor
                   Her ......................................................................................................... 44

CONCLUSION ........................................................................................................... 45

## TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. Dep't of Homeland Sec.*,
   787 F.3d 524 (D.C. Cir. 2015) ............................................................................................36

*ACLU v. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) ................................................................................................42

*Acosta v. District of Columbia*,
   Civ. A. No. 20-1189 (RC), 2020 WL 2934820 (D.D.C. June 3, 2020) ..................................39

*Allina Health Servs. v. Sebelius*,
   746 F.3d 1102 (D.C. Cir. 2014) ....................................................................................37, 38

*Anversa v. Partners Healthcare Sys., Inc.*,
   835 F.3d 167 (1st Cir. 2016) ..............................................................................................24

*Ass'n of Flight Attendants v. Chao*,
   493 F.3d 155 (D.C. Cir. 2007) ............................................................................................44

*Bois v. Dep't of Health & Hum. Servs.*,
   Civ. A. No. 11-1563 (ABJ), 2012 WL 13042904 (D.D.C. Mar. 2, 2012) .............................24

*Bouarfa v. Mayorkas*,
   604 U.S. 6 (2024) ..............................................................................................................38

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ..........................................................................................................33

*Brodie v. Dep't of Health & Hum. Servs.*,
   715 F. Supp. 2d 74 (D.D.C. 2010) .................................................................................24, 42

*Brodie v. Dep't of Health & Hum. Servs.*,
   796 F. Supp. 2d 145 (D.D.C. 2011) ................................................................. 11, 14, 19, 32

*Brown v. INS*,
   775 F.2d 383 (D.C. Cir. 1985) ............................................................................................17

*Burke v. EPA*,
   127 F. Supp. 2d 235 (D.D.C. 2001) ...............................................................................passim

*Caiola v. Carroll*,
   851 F.2d 895 (D.C. Cir. 1988) ............................................................................................45

**Cases (cont.)**

*Calcutt v. FDIC*,
  598 U.S. 623 (2023) ...................................................................................................20

*Campbell v. Schmidt*,
  Civ. A. No. 20-1785 (CRC), 2020 WL 6445874 (D.D.C. Nov. 3, 2020) ........................passim

*Canales v. Paulson*,
  Civ. A. No.06-1330, 2007 WL 2071709 (D.D.C. July 16, 2007).....................................21, 22

*Cardinal Health, Inc. v. Holder*,
  846 F. Supp. 2d 203 (D.D.C. 2012) ...........................................................................44

*Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*,
  439 F.3d 715 (D.C. Cir. 2006)...................................................................................19

*Chen v. Att'y Gen.*,
  546 F. Supp. 1060 (D.D.C. 1982) ..........................................................................26, 27

*Christian v. Sec'y of Army*,
  Civ. A. No. 11-0276, 2011 WL 345945 (D.D.C. Jan. 31, 2011)............................................36

*Colley v. James*,
  254 F. Supp. 3d 45 (D.D.C. 2017) .............................................................................40

*Combat Vets. for Cong. Pol. Action Comm. v. FEC*,
  795 F.3d 151 (D.C. Cir. 2015)...................................................................................20

*Comm. for Nuclear Resp. v. Seaborg*,
  463 F.2d 783 (D.C. Cir. 1971)...................................................................................15

*Conn. Dep't of Child. & Youth Servs. v. Dep't of Health & Hum. Servs.*,
  9 F.3d 981 (D.C. Cir. 1993)......................................................................................10

*Echols v. Morpho Detection, Inc.*,
  Civ. A. No. 12-1581 CW, 2013 WL 1501523 (N.D. Cal. Apr. 11, 2013) ..............................36

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs.*,
  396 F.3d 1265 (D.C. Cir. 2005) ............................................................................33, 35

*Env't Def. Fund v. EPA*,
  124 F.4th 1 (D.C. Cir. 2024).....................................................................................30

*FDA v. Wages & White Lion Invs., LLC*,
  145 S. Ct. 898 (2025) ..............................................................................................20

**Cases (cont.)**

*Fed. Food Serv., Inc. v. Donovan*,
   658 F.2d 830 (D.C. Cir. 1981) ........................................................................38

*Fisher v. Pension Benefit Guar. Corp.*,
   994 F.3d 664 (D.C. Cir. 2021) ...................................................................37, 38

*Fort Myer Constr. Corp. v. Shrensky*,
   Civ. A. No. 23-2275 (CJN), 2024 WL 181075 (D.D.C. Jan. 17, 2024)..................39

*FTC v. Staples, Inc.*,
   190 F. Supp. 3d 100 (D.D.C. 2016) ................................................................44

*Fuentes v. Azar*,
   468 F. Supp. 3d 83 (D.D.C. 2020) ..................................................................44

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) .......................................................................33

*Gentry v. E. W. P'ship Mgmt. Co. Inc.*,
   816 F.3d 228 (4th Cir. 2016) .........................................................................41

*Gilliard v. McWilliams*,
   315 F. Supp. 3d 402 (D.D.C. 2018) ................................................................39

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .....................................................................................29

*Hi-Tech Furnace Sys., Inc. v. FCC*,
   224 F.3d 781 (D.C. Cir. 2000) .......................................................................24

*Horning v. SEC*,
   570 F.3d 337 (D.C. Cir. 2009) .......................................................................13

*Ivey v. Duncan*,
   Civ. A. No. 13-0576, 2014 WL 11256897 (D.D.C. Aug. 4, 2014).........................36

*Jackson v. Mabus*,
   808 F.3d 933 (D.C. Cir. 2015) ..................................................................10, 24

*Johnson v. Copyright Royalty Bd.*,
   969 F.3d 363 (D.C. Cir. 2020) .......................................................................24

*Jones v. District of Columbia*,
   177 F. Supp. 3d 542 (D.D.C. 2016) ................................................................40

**Cases (cont.)**

*Kisser v. Cisneros*,
    14 F.3d 615 (D.C. Cir. 1994).................................................................29, 30

*Kreis v. Sec'y of Air Force*,
    406 F.3d 684 (D.C. Cir. 2005)....................................................................29

*Legion Constr., Inc. v. Gibson*,
    310 F.R.D. 1 (D.D.C. 2015) ........................................................................38

*Liff v. Off. of Inspector Gen.*,
    881 F.3d 912 (D.C. Cir. 2018).....................................................................35

*Loja-Tene v. Barr*,
    975 F.3d 58 (1st Cir. 2020)..........................................................................20

*M Nicolas Enters., LLC v. United States*,
    No. 20-691C, 2022 WL 558043 (Fed. Cl. Feb. 23, 2022).........................35

*Mantex, Inc. v. United States*,
    841 F. Supp. 1290 (Ct. Int'l Trade 1993) ...................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...............................................................................passim

*Mueller v. Winter*,
    485 F.3d 1191 (D.C. Cir. 2007)..................................................................36

*Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*,
    783 F.3d 1301 (D.C. Cir. 2015)..................................................................31

*Nasdaq Stock Mkt. LLC v. SEC*,
    38 F.4th 1126 (D.C. Cir. 2022)...................................................................30

*Navy SEAL 1 v. Austin*,
    600 F. Supp. 3d 1 (D.D.C. 2022)................................................................39

*New England Power Generators Ass'n, Inc. v. Fed. Energy Regul. Comm'n*,
    879 F.3d 1192 (D.C. Cir. 2018)............................................................25, 31

*New LifeCare Hosps. of N.C., LLC v. Becerra*,
    7 F.4th 1215 (D.C. Cir. 2021)......................................................................9

*N.J. Conservation Found. v. Fed. Energy Regul. Comm'n*,
    111 F.4th 42 (D.C. Cir. 2024)......................................................................37

**Cases (cont.)**

*Nw. Immigr. Rts. Project v. USCIS*,
  496 F. Supp. 3d 31 (D.D.C. 2020) .......................................................................16

*Olu-Cole v. E.L. Haynes Pub. Charter Sch.*,
  930 F.3d 519 (D.C. Cir. 2019).............................................................................39

*PDK Lab'ys Inc. v. DEA*,
  362 F.3d 786 (D.C. Cir. 2004).......................................................................20, 31

*Poss v. Kern*,
  Civ. A. No. 23-2199 (DLF), 2024 WL 4286088 (D.D.C. Sept. 25, 2024)............36

*PPG Indus., Inc. v. United States*,
  52 F.3d 363 (D.C. Cir. 1995)...............................................................................37

*Prairie State Generating Co. LLC v. Sec'y of Lab.*,
  792 F.3d 82 (D.C. Cir. 2015)...............................................................................31

*R.E. Dietz Corp. v. United States*,
  939 F.2d 1 (2d Cir. 1991) ....................................................................... 10, 12, 14

*RadNet Mgmt v. NLRB*,
  992 F.3d 1114 (D.C. Cir. 2021)...........................................................................20

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
  795 F.2d 90 (D.C. Cir. 1986)...............................................................................39

*Roane v. Barr*,
  980 F.3d 123 (D.C. Cir. 2020).............................................................................39

*Robinson v. Cheney*,
  876 F.2d 152 (D.C. Cir. 1989).............................................................................10

*Roemer v. Hoffmann*,
  419 F. Supp. 130 (D.D.C. 1976)....................................................................21, 22

*Sabino Canyon Tours, Inc. v. Forest Serv.*,
  298 F. Supp. 3d 60 (D.D.C. 2018) .......................................................................18

*Safari Club Int'l v. Jewell*,
  47 F. Supp. 3d 29 (D.D.C. 2014) .........................................................................43

*Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*,
  320 F.3d 1081 (10th Cir. 2003) ...........................................................................43

**Cases (cont.)**

*Sampson v. Murray,*
   415 U.S. 61 (1974) ...................................................................................................40

*Sanchez-Alanis v. Fed. Bureau of Prisons,*
   270 F. Supp. 3d 215 (D.D.C. 2017) .........................................................................36

*Sault Ste. Marie Tribe of Chippewa Indians v. Haaland,*
   659 F. Supp. 3d 33 (D.D.C. 2023) ...........................................................................16

*SEC v. Behrens,*
   Civ. A. No. 08-0013, 2011 WL 6884801 (D. Neb. Dec. 29, 2011) .........................15

*SEC v. Ferrone,*
   188 F. Supp. 3d 709 (N.D. Ill. 2015) .......................................................................13

*Second City Music, Inc. v. City of Chi.,*
   333 F.3d 846 (7th Cir. 2003) ...................................................................................43

*Shaw v. Austin,*
   539 F. Supp. 3d 169 (D.D.C. 2021) .........................................................................44

*Short v. Hartman,*
   87 F.4th 593 (4th Cir. 2023) ..............................................................................13, 28

*Sierra Club v. EPA,*
   292 F.3d 895 (D.C. Cir. 2002) .................................................................................17

*Silverman v. Dep't of Def.,*
   817 F. Supp. 846 (S.D. Cal. 1993) .....................................................................21, 22

*Singh v. Berger,*
   56 F.4th 88 (D.C. Cir. 2022) ....................................................................................44

*Sloan v. Dep't of Hous. & Urb. Dev.,*
   231 F.3d 10 (D.C. Cir. 2000) ...................................................................................38

*Steele v. Dep't of Def.,*
   Civ. A. No. 22-3604 (CJN), 2022 WL 22329872 (D.D.C. Dec. 8, 2022) ...............43

*Telecommc'ns Rsch. & Action Ctr. v. FCC,*
   750 F.2d 70 (D.C. Cir. 1984) ...................................................................................23

*Thomas v. Fed. Aviation Admin.,*
   Civ. A. No. 05-2391 (CKK), 2007 WL 219988 (D.D.C. Jan. 25, 2007) .................35

**Cases (cont.)**

*Together Emps. v. Mass Gen. Brigham Inc.*,
    19 F.4th 1 (1st Cir. 2021) ................................................................................43

*United States v. Bailey*,
    444 U.S. 394 (1980) ........................................................................... 13, 28

*United States v. Benson*,
    561 F.3d 718 (7th Cir. 2009) .......................................................................13

*United States v. Dozier*,
    162 F.3d 120 (D.C. Cir. 1998) ....................................................................13

*United States v. Kirkland*,
    104 F.3d 1403 (D.C. Cir. 1997) ..................................................................13

*Uzelmeier v. Dep't of Health & Hum. Servs.*,
    541 F. Supp. 2d 241 (D.D.C. 2008) ................................... 10, 11, 21, 22

*Weissman v. Nat'l R.R. Passenger Corp.*,
    21 F.4th 854 (D.C. Cir. 2021) ....................................................................42

*White v. Off. of Pers. Mgmt.*,
    787 F.2d 660 (D.C. Cir. 1986) ....................................................................36

*Wilson v. McHugh*,
    842 F. Supp. 2d 310 (D.D.C. 2012) ...........................................................36

**Statutes**

5 U.S.C. § 552a(d)(2)(B) ..........................................................................33, 34

5 U.S.C. § 552a(e)(5) .......................................................................................34

5 U.S.C. § 552a(g)(1) ................................................................................34, 35

5 U.S.C. § 555(b) .............................................................................................23

5 U.S.C. § 701(a)(2) .........................................................................................29

5 U.S.C. § 702(2)(A) .......................................................................................10

5 U.S.C. § 704 ...........................................................................................33, 35

5 U.S.C. § 706 ...........................................................................................20, 23

**Statutes (cont.)**

42 U.S.C. § 289b ........................................................................................................2

**Regulations**

2 C.F.R. § 180.200 ....................................................................................................5

2 C.F.R. §180.860(a) .........................................................................................31, 38

2 C.F.R. § 180.125(a) ...............................................................................................2

2 C.F.R. § 180.800(d) .......................................................................................10, 31

2 C.F.R. § 180.855(b) ...............................................................................10, 17, 18

2 C.F.R. § 180.860(f) ..............................................................................................27

2 C.F.R. § 180.875 ..................................................................................................43

2 C.F.R. § 180.800 ..................................................................................................38

2 C.F.R. § 180.845(a) .............................................................................................38

42 C.F.R. Part 93 .....................................................................................................2

42 C.F.R. Part 93 (2005) .........................................................................................1

42 C.F.R. § 93.406 ..................................................................................................43

42 C.F.R. § 93.75(b) ................................................................................................1

42 C.F.R. § 93.102 ...................................................................................................1

42 C.F.R. § 93.300 ...................................................................................................1

42 C.F.R. § 93.400(a) ....................................................................................2, 24, 30

42 C.F.R. § 93.500 ...................................................................................................2

42 C.F.R. § 93.501 ..........................................................................................2, 3, 4, 5

**Other Authorities**

*Findings of Research Misconduct*,
   88 Fed. Reg. 60,694, 60,695 (Sept. 5, 2023) ........................................................6

Defendants Department of Health and Human Services (the "Department"); Robert F. Kennedy, Jr., Secretary of Health and Human Services; Office of Research Integrity (the "Office"); Sheila Garrity, Director of the Office; and Jennifer D. Johnson, Acting Deputy Assistant Secretary for Acquisitions (the "Debarring Official"), by and through the undersigned counsel, respectfully file this memorandum of points and authorities in support of their cross-motion for summary judgment and opposition to Plaintiff Ivana Frech's motion for summary judgment, ECF No. 39.

Frech challenges her three-year debarment from certain transactions involving the federal government. The Office found that Frech knowingly and intentionally falsified and/or fabricated research as an assistant professor at the University of Utah ("Utah"). In imposing the debarment, the Debarring Official found that Frech failed to demonstrate present responsibility, that Frech was solely responsible for her misconduct, and that Frech's misconduct was serious and compelling..

## BACKGROUND

### I.    <u>Legal Background</u>

An institution that receives or applies for funding from the Public Health Service (the "Service") for certain biomedical or behavioral research projects is responsible for responding to allegations of research misconduct against an individual. 42 C.F.R. §§ 93.102, 93.300.[1] "Research misconduct means fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results." *Id.* § 93.103. A research misconduct finding has three elements: (1) "[t]here be a significant departure from accepted practices of the relevant research community," (2) "[t]he misconduct be committed intentionally, knowingly, or recklessly," and (3) "[t]he allegation be proven by a preponderance of the evidence." *Id.* § 93.104. An institution must

---

[1]     Citations are to 42 C.F.R. Part 93 (2005), the regulation that are applicable in this case. *See* 42 C.F.R. § 93.75(b).

make a final determination of research misconduct findings that includes "whether the institution found research misconduct, and if so, who committed the misconduct." *Id.* § 93.315(c).

The Office is a component of the Department with authority to make research misconduct findings. 42 U.S.C. § 289b; 42 C.F.R. Part 93. After receiving an institution's investigative report, the Office conducts an oversight review of the institution's investigation to determine whether the institution complied with its regulatory responsibilities. 42 C.F.R. §§ 93.400(a)(6), 93.403. The Office may also conduct its own additional analyses, develop its own evidence, and make its own research misconduct findings. *Id.* §§ 93.400(a)(7), 93.403(d)-(g), 93.404(a).

Debarment protects "the integrity of Federal programs" by ensuring agencies "conduct[ ] business only with responsible persons." 2 C.F.R. § 180.125(a); *see also id.* §§ 376.10-376.30. Debarment will "exclude from Federal programs persons who are not presently responsible." *Id.* § 180.125(b). A debarred person generally cannot participate in "covered transactions," except as permitted in very limited circumstances. *Id.* §§ 180.200, 180.205(c). Covered transactions include grants, cooperative agreements, scholarships, and fellowships. *Id.* §§ 180.210, 180.970(a)(1)-(4). An "agency may debar a person for" any "cause of so serious or compelling a nature that it affects [the respondent's] present responsibility." *Id.* § 180.800(d). "Once a cause for debarment is established," the "respondent ha[s] the burden of demonstrating to the satisfaction of the debarring official that [she is] presently responsible and that debarment is not necessary." *Id.* § 180.855(b).

Regulations in existence at the time of the events at issue provided that if the Office made research misconduct findings and the Department proposed administrative actions, the respondent could contest the findings and proposed actions by seeking an Administrative Law Judge ("ALJ") hearing within thirty days of receiving the charge letter. 42 C.F.R. §§ 93.500, 93.501. If a respondent did not contest the charge letter within thirty days of receiving it, the Office's research

misconduct findings and proposed administrative actions would become final and the matter referred to the Debarring Official to impose the debarment. *Id.* § 93.406.

II.     **Factual and Procedural Background**

   A.     **The University of Utah's Research Misconduct Investigation of Frech**

Frech is a former assistant professor at Utah's School of Medicine, Department of Internal Medicine. Administrative Record ("AR") 59. Frech had been a postdoctoral fellow in Dr. Jerry Kaplan's laboratory, and eventually became an assistant professor, continuing to publish research with Dr. Kaplan and others on the molecular mechanisms of cellular iron regulation. *Id.*

In Fall 2011, the Office received allegations of research misconduct involving papers that Frech and Kaplan had published. AR 571-97. The Office forwarded the allegations to Utah, which investigated the matter. AR 962-1058. During this investigation, Frech wrote a letter to Utah's research integrity officer, admitting that she had "generated" an "image" in one publication, a July 2008 article in the journal *Developmental Cell* (the "2008 Article"), and that "the duplication came from me." AR 763. Frech also admitted that she "generated the figures in" another publication, a November 2011 article in the journal *Cell Metabolism* (the "November 2011 Article"), AR 828, for which she had been the first (or "lead") author, AR 547. Utah's Investigating Committee found that she committed research misconduct in ten publications and that there were multiple instances of intentional falsification, and recommended that Utah terminate her employment. AR 962-1058. Utah accepted the Investigating Committee's findings and recommendation. AR 1071-73.

Frech appealed the decision to Utah's Office of the Academic Senate. AR 3847-49. In her appeal, Frech admitted to assembling the figures at issue in the 2008 and November 2011 Articles. AR 3968-69. Utah convened a Consolidated Hearing Committee Panel (the "Panel"), which held a hearing and issued a report and recommendation. AR 4045-53. The Panel did not conduct a *de novo* review of the evidence. AR 4047. Instead, the Panel "constructed a table listing each paper

by number along with the types of alleged irregularities, the Investigating Committee conclusions regarding the allegations, and some indication of the evidence behind those conclusions." *Id.*

The Panel found that the falsifications in the November 2011 Article were due to reckless disregard of accepted practices. AR 4048. It further found that the 2008 Article "contained images that were intentionally manipulated to present false data," and that "[t]his was done by computer copying of information from one scanned image to another or in some instances by splicing of gel images to make one image." *Id.* But the Panel could not "conclude that it was done by [Frech] as opposed to an unknown third person," although it did not address her admission that she generated and/or assembled the images in these papers. *Id.* As to a third publication, a January 2011 article in the journal *Cell Metabolism* (the "January 2011 Article"), for which Frech was first author, AR 559, the Panel found that "the evidence that [Frech] fabricated notebook pages is confusing and not sufficiently persuasive of intentional falsification." AR 4049. Six National Institutes of Health grants supported the research reported in these publications, and one grant supporting the research in the November 2011 Article identified Frech as principal investigator for research. AR 48, 557.

The Panel found that Frech had engaged in "reckless disregard of accepted practices." AR 4045. It did not find that Frech had intentionally falsified research, as it did not determine that she had been responsible for the intentional falsification in the 2008 Article. AR 4046. The Panel also found that "[t]here was complicity in this misconduct within the laboratory that goes substantially beyond Dr. [Frech]," as other coauthors should have spotted the errors in the publications, although the Panel did not find that anyone else in the laboratory manipulated research results or otherwise engaged in research misconduct. AR 4050. The Panel agreed with the Investigating Committee's recommendation that Utah terminate Frech's employment. *Id.* In its final decision, Utah agreed with the Panel's findings of research misconduct and terminated Frech's employment. AR 4060.

**B.      The Office's Research Misconduct Findings and Frech's Debarment**

The Office conducted an oversight review of Utah's proceedings. AR 4208-20. As part of this review, it conducted its own image analysis of Frech's work. *Id.* Based on evidence that Utah had gathered and its own analysis, the Office made six research misconduct findings against Frech. AR 4783-803. It found by a preponderance of the evidence that Frech knowingly and intentionally falsified and/or fabricated images by reusing, relabeling, and manipulating images to falsely report data in eight figures across the 2008, January 2011, and November 2011 Articles. AR 4783-803. After weighing the aggravating and mitigating factors, the Office proposed that Frech be debarred for a period of three years from participating in any covered transactions under 2 C.F.R. § 180.200. AR 4802-03. The Office further proposed that Frech be "prohibited from serving in any advisory capacity to [the Service]," and that the Office "send to the journal *Developmental Cell* a notice of [the Office's] findings and the need for retraction or correction of" the 2008 Article. AR 4803.

On July 18, 2023, the Office mailed Frech a charge letter notifying her of its findings of research misconduct against her, the grounds for these findings, and the Department's proposed administrative actions, including the proposed debarment. AR 4783-804. The letter notified Frech of her right to contest the findings and proposed administrative actions by seeking an ALJ hearing. AR 4785. It also notified her that she must seek a hearing "within 30 days of receipt of this letter," and that if she did "not request a hearing, the research misconduct findings and administrative actions set forth above will become effective 30 days from the date of receipt of this letter." *Id.*; *see also* AR 4786 (same). Frech received the letter on July 19, 2023. Delivery Proof, ECF No. 23-1. Because she did not request an ALJ hearing within thirty days, the misconduct findings and proposed administrative actions, including her debarment, became final on August 19, 2023.

On August 29, 2023, Frech filed this action and moved for leave to file under seal both the complaint and a motion for a temporary restraining order. ECF Nos. 1, 2, 9. On August 30, 2023,

the Department entered Frech's name in the General Services Administration's System for Award Management Exclusions. Exclusion. ECF No. 23-6. On August 31, 2023, this Court denied Frech leave to file under seal. ECF No. 5. The Office submitted its findings of research misconduct for publication in the Federal Register, which made the findings available online for public inspection on September 1, 2023, and officially published them the next business day, on September 5, 2023. *See Findings of Research Misconduct*, 88 Fed. Reg. 60,694, 60,695 (Sept. 5, 2023) ("Filed 9-1-23; 8:45 am"). That day, Frech refiled her complaint on the public docket. ECF No. 7. On February 9, 2024, she moved for a temporary restraining order and preliminary injunction. ECF No. 20. Following a hearing, this Court denied the motion, concluding that she failed to establish likely success on the merits, irreparable harm, or that the balance of equities or public interest favored relief. *See* Hr'g Tr. at 41:16-60:20, ECF No. 32. At Defendants' request, the Court remanded to the Department, without vacatur, for further proceedings. *See* Min. Order (Apr. 1, 2024).

On remand, the Office issued amended research misconduct findings against Frech. AR 4919. It made six findings of research misconduct against Frech, finding by a preponderance of the evidence that she had "intentionally and knowingly falsified and/or fabricated western blot and autoradiogram images by reusing, relabeling, and/or manipulating images to falsely report data in eight (8) figures included in three (3) [Service]-supported published papers, namely," the 2008, January 2011, and November 2011 Articles. AR 4925 ¶ 49; *see also* AR 4926-40 ¶¶ 50-168 (setting out findings). As part of its review, the Office "conducted its own image analysis of Frech's work," "reviewed evidence that the [Utah] Panel did not address," and considered new arguments and evidence that Frech submitted to the Debarring Official in September 2024. AR 4925 ¶¶ 46-48.

Based on its findings of research misconduct, the Office found that Frech "lacks the present responsibility to participate [in] federal government procurement and nonprocurement programs."

AR 4940 ¶ 170. The Office rejected Frech's argument that she is presently responsible, noting that she "never took responsibility for her knowing and intentional research misconduct," but rather, continues to insist that she only "made mistakes" that were "unintentional." AR 4941 ¶ 180. "Even today," the Office noted, Frech "continues to deny that she committed knowing and intentional misconduct," citing her repeated statements in her September 2024 submissions that she only made "mistakes." *Id.* ¶ 181. "These statements," the Office found, "are far from accepting responsibility for [her] intentional and knowing research misconduct." *Id.* ¶ 182. The Office also observed that Frech's "most recent position" had been "as a hospital administrator" from May 2020 through January 2024. *Id.* ¶ 183. Although Frech asserted that this position "did not involve any research whatsoever," the Office determined that "based on the responsibilities of the position listed in her letter, the position appeared to include responsibilities adjacent to covered transactions." *Id.* The Office further noted that Frech's "letter also states that [she] wishes to return to this position," and found on these bases that Frech "still presents a risk" to federal funds. *Id.*

The Office further found that Frech had "solely planned, initiated, and carried out the wrongdoing." AR 4942 ¶ 186. It rejected Frech's argument that Utah found that she was not solely responsible for the misconduct, explaining that "the evidence in the record . . . does not show that anyone else contributed to her intentional and knowing research misconduct in the three papers at issue." *Id.* ¶ 187. Although Utah "found that Dr. Kaplan, as the laboratory's leader, was lax in his oversight of and systematically failed in supervising," Frech, Utah "also found no evidence that he directly contributed to the misrepresentation or manipulation of data." *Id.* (cleaned up). Utah likewise was "struck by the conspicuous failure of all coauthors . . . to catch and correct these mistakes before publication." *Id.* The Office found, however, that neither Kaplan's nor the other coauthors' shortfalls "render[ed] them culpable for, or mean that they assisted [Frech] plan,

initiate, or carry out, her research misconduct." *Id.* The Office noted that Frech "does not claim, and [it] found no evidence, that anyone else assembled the figures that are the subject of [its] findings, or otherwise intentionally falsified or fabricated those figures." *Id.* While Frech alleged that other publications that she had not authored and in which she had no research role contained the same sort of errors as her publications, the Office deemed these allegations immaterial to Frech's own misconduct. *Id.* ¶ 188. Finally, it explained that it would deem a three-year debarment appropriate regardless of whether Frech was solely responsible for the misconduct. *Id.* ¶ 189.

The Office found that Frech's "misconduct was not an isolated event but rather was a pattern that occurred over the course of several years in three [Service]-supported papers." AR 4942-43 ¶ 190. It also found that her "misconduct had a significant impact on the proposed and reported research record, other researchers, institutions, and the public health or welfare." AR 4943 ¶ 191. Specifically, her research appeared in three papers; used funds that could have gone to other research; led to retraction of two papers and the Office to conclude that a third paper should be retracted or corrected; wasted valuable time and resources because other researchers would or did follow up on her work; and was cited at least 142 times in the scientific literature. *Id.* ¶¶ 193-96.

The Office also addressed the time that had passed since Frech's misconduct and explained why debarment nonetheless remained appropriate. AR 4944 ¶ 199. The Office explained that it "considered the length of time elapsed, but found, on balance, that debarment was still appropriate because of [the] countervailing factors discussed in this charge letter, including [Frech's] failure, even today, to accept responsibility for and recognize the seriousness of her misconduct." *Id.* The Office also explained that the time gap between Frech's misconduct and debarment was "[d]ue to the large and growing volume of [the Office's] responsibilities relative to its staffing levels." *Id.*

Last, the Office considered Frech's "activities in the years since" her misconduct, but found

them "not . . . dispositive, particularly in light of the countervailing factors . . . that contraindicate her present responsibility." AR 4944 ¶ 200. Specifically, it found that she failed to corroborate certain assertions about her post-misconduct job as an assistant research scientist in Dr. Fenghuang Zhan's lab at the University of Iowa ("Iowa"), including that she (1) disclosed her intent to accept the job to the Office, which had "no record of such a communication;" (2) disclosed to Zhan the Office's investigation of her and had an oversight plan for her work; and (3) was not involved with federally funded research while at the lab. AR 4945-46 ¶¶ 202-12. Indeed, the Office found, her "apparent recent lack of candor about her involvement in the [lab's] federally funded research and attempts to procure [such] funding underscores her lack of present responsibility." AR 4946 ¶ 212.

On November 6, 2024, "based on the information presented in the administrative record and findings herein," the Debarring Official imposed on Frech a three-year term of debarment, retroactive to August 20, 2023. AR 4953-54.[2]

## LEGAL STANDARDS

At the summary judgment stage in an Administrative Procedure Act ("APA") case, a court "review[s] the administrative record to determine whether the agency's decision was arbitrary [or] capricious." *New LifeCare Hosps. of N.C., LLC v. Becerra*, 7 F.4th 1215, 1222 (D.C. Cir. 2021).

## ARGUMENT

The Debarring Official's findings that Frech failed to demonstrate present responsibility, her misconduct is serious and compelling, and she was solely responsible for the misconduct were not arbitrary or capricious. APA relief is unavailing, further, as the Privacy Act offers an adequate remedy. Last, the only proper remedy for unlawful debarment would be vacatur, not an injunction.

---

[2]    Because the Debarring Official made her decision based on the Office's findings, AR 4953, Defendants attribute the Office's findings to the Debarring Official throughout this memorandum.

I.    **The Debarring Official's Determination That Frech Failed to Demonstrate Present Responsibility Was Not Arbitrary or Capricious**

Debarment is proper if an agency determines that a person lacks "present responsibility." 2 C.F.R. § 180.800(d). The "present responsibility" inquiry asks "whether a person's exclusion is in the public interest." *Uzelmeier v. Dep't of Health & Hum. Servs.*, 541 F. Supp. 2d 241, 248 (D.D.C. 2008). "[T]he relevant question is whether or not one could or should be entrusted with public funds or a public contract at the present time or going forward." *Id.* This "assures that the agency will impose debarment only in order to protect the Government's proprietary interest and not for the purpose of punishment." *Robinson v. Cheney*, 876 F.2d 152, 160 (D.C. Cir. 1989).

Judicial review of an agency's "present responsibility" determination entails a triple dose of deference. First, a respondent bears the burden to demonstrate present responsibility; an agency has no burden to show otherwise. *See* 2 C.F.R. § 180.855(b). Second, a respondent must make this showing "to the satisfaction of the debarring official," *id.*, and a law that "speaks in terms of the [agency's] satisfaction" gives an agency an "extraordinary grant of discretion," such that a person "would have to present an egregious claim to prevail." *Conn. Dep't of Child. & Youth Servs. v. Dep't of Health & Hum. Servs.*, 9 F.3d 981, 985 (D.C. Cir. 1993); *see also R.E. Dietz Corp. v. United States*, 939 F.2d 1, 5 (2d Cir. 1991) ("The language 'to the satisfaction of the Secretary'" requires that "deference be given to the" agency); *Mantex, Inc. v. United States*, 841 F. Supp. 1290, 1304 (Ct. Int'l Trade 1993) ("to the satisfaction of the" agency language requires "deference" to agency). Third, a court asks only whether the agency's present responsibility finding is arbitrary or capricious, a low hurdle to clear, not whether it is correct in some objective sense. *See* 5 U.S.C. § 702(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); *Jackson v. Mabus*, 808 F.3d 933,

936 (D.C. Cir. 2015) ("The APA's arbitrary and capricious standard is deferential").

The Debarring Official's determination that Frech failed to show present responsibility was not arbitrary or capricious. The Office found that Frech "never took responsibility for her knowing and intentional research misconduct." AR 4941 ¶ 180. "Even today," it found, Frech "continues to deny that she committed knowing and intentional misconduct." *Id.* ¶ 181. As recently as September 2024, Frech insisted that she simply had "made mistakes" and "contend[ed] that those mistakes were not intentional or done knowingly." *Id.* ¶¶ 180-81. Frech refused to admit "that she was the one who falsified and/or fabricated the figures" at issue or that "her 'mistakes' were intentional and knowing falsification or fabrication." *Id.* ¶ 181. She instead said these so-called "mistakes" were "unintentional." *Id.* ¶ 180. The Debarring Official, in turn, considered "the length of time that lapsed" since her misconduct, but found that "[o]n balance, debarment was . . . still . . . appropriate because of [the] countervailing [aggravating] factors . . . including Dr. Frech's failure, even today, to accept responsibility for and recognize the seriousness of her misconduct." AR 4953.

The Debarring Official's finding that Frech lacks present responsibility was not arbitrary or capricious given Frech's refusal, to this day, to acknowledge that her misconduct was knowing and intentional. *See* Hr'g Tr. at 47:24-25 48:8-9 (three-year debarment reasonable because Frech "failed to accept responsibility for her actions," as she "had never admitted that she intentionally fabricated evidence"); *Uzelmeier*, 541 F. Supp. 2d at 248 (affirming agency's finding that plaintiff lacked present responsibility despite a seven-year gap between when agency learned of misconduct and when it initiated proceedings, given that "plaintiff has admitted no past wrongdoing"); *Brodie v. Dep't of Health & Hum. Servs.*, 796 F. Supp. 2d 145, 156 (D.D.C. 2011) (affirming debarment where the agency "consider[ed] whether Plaintiff had expressed remorse or accepted responsibility for his actions, finding that he had done neither"); *Burke v. EPA*, 127 F. Supp. 2d 235, 237, 241-

42 (D.D.C. 2001) (plaintiff's "failure to take personal responsibility for his offense" supported his debarment despite the "time that had elapsed"—five years—since his misconduct occurred).

Frech offers five counterarguments, but none are persuasive. First, she insists that she has expressed remorse for her conduct, but she has expressed remorse only for acting unintentionally, not for acting knowingly and intentionally. Second, Frech argues that her debarment was punitive, but it was not punitive to find that Frech failed to demonstrate present responsibility based on her refusal, to this very day, to acknowledge that her misconduct was knowing and intentional. Third, Frech argues that her activities since her misconduct demonstrate present responsibility, but the Debarring Official addressed each point Frech makes and reasonably explained why she reached a different conclusion. Fourth, Frech argues that the Debarring Official did not meaningfully address the time that has elapsed since her misconduct, but the Debarring Official explained that Frech's ongoing refusal to acknowledge that her misconduct was knowing and intentional evinced a lack of present responsibility despite the time that has passed since her misconduct, and explained that the gap between her misconduct and debarment was due to the Office's workload and staffing levels. Fifth, Frech argues that Utah's findings make it reasonable for her to claim that her actions were not knowing or intentional, but that did not preclude the Debarring Official from reaching a different conclusion, especially because the Office reasonably explained why it reached a different conclusion than Utah as to Frech's level of culpability. For these reasons, the Debarring Official's finding that Frech failed to demonstrate present responsibility was not arbitrary or capricious.

### A.    Frech Has Failed to Acknowledge Acting Knowingly and Intentionally

Although Frech insists that the Debarring Official "discounts the numerous times that [she] has expressed remorse for her conduct throughout the saga," she acknowledges only that she made "mistakes" not that her misconduct was knowing and intentional. Pl.'s Mem. at 16-17. She thus "expressed remorse," *id.* at 16, so to speak, only for unintentional behavior, which is less culpable

than the knowing and intentional misconduct that the Debarring Official found that she committed. *See United States v. Bailey*, 444 U.S. 394, 404 (1980) (listing, "[i]n descending order of culpability . . . purpose, knowledge, [and] recklessness"); *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) ("Recklessness is a lower bar than intent"). The Debarring Official reasonably found that Frech's ongoing refusal to acknowledge that her misconduct was knowing and intentional evinced a lack of present responsibility. *See United States v. Dozier*, 162 F.3d 120, 128 (D.C. Cir. 1998) (denying "intent" is not "acceptance of responsibility"); *United States v. Kirkland*, 104 F.3d 1403, 1405 (D.C. Cir. 1997) (a "challenge to the requisite intent is just another form of disputing culpability").

**B.      The Debarring Official's Present Responsibility Finding Was Not Punitive**

Frech's accusation that the Debarring Official is "punishing" her, Pl.'s Mem. at 14, by deeming her ongoing refusal to admit that her misconduct was knowing or intentional to evince a lack of present responsibility, is patently meritless. Knowing and intentional misconduct is graver than mistaken or reckless misconduct. *See Bailey*, 444 U.S. at 404; *Short*, 87 F.4th at 611. It was reasonable, and plainly not punitive, for the Debarring Official to determine that Frech's failure to acknowledge acting knowingly or intentionally evinced lack of present responsibility. *See Horning v. SEC*, 570 F.3d 337, 346 (D.C. Cir. 2009) (lifetime ban on supervising securities brokers and/or dealers not arbitrary or capricious where defendant "refused to acknowledge his own culpability"); *United States v. Benson*, 561 F.3d 718, 724 (7th Cir. 2009) (enjoining sale of materials advocating non-payment of federal income taxes as defendant did "not acknowledge his culpability"); *SEC v. Ferrone*, 188 F. Supp. 3d 709, 713 (N.D. Ill. 2015) ("In light of his steadfast denial of culpability, [officer's] assurance that he will not violate the securities laws in the future rings hollow").

Frech's defiant, unrepentant, and self-pitying arguments only underline her lack of present responsibility. By describing the Debarring Official's decision as "ultimatum-like" and offering a "Hobson's choice, Agree with us entirely or be disbarred;" claiming that Defendants demand the

"unconditional surrender of [her] reputation to placate" them; declaring that she does not "actually agree[ ] that she" had acted knowingly and intentionally; and accusing Defendants of engaging in "arm-twisting" in order "to coerce [her] into trading an admission of a higher level of scienter for a finding of present responsibility," Pl.'s Mem. at 15-16, Frech makes clear as day that she refuses to take responsibility for the knowing and intentional nature of her research misconduct. And while Frech may well have "every right to disagree" with the Debarring Official's finding that she acted knowingly and intentionally, *id.* at 17, she does not have a right to deny that she acted knowingly and intentionally while simultaneously claiming credit for taking responsibility for her behavior.

### C.    The Debarring Official's Finding that Frech's Activities Since Her Misconduct Fail to Demonstrate Present Responsibility Was Not Arbitrary or Capricious

The Debarring Official's determination that Frech's activities since her misconduct fail to demonstrate present responsibility was not arbitrary or capricious. Agency action is not arbitrary or capricious so long as it "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (cleaned up). That is what the Debarring Official did. She considered Frech's "activities in the years since [Utah's] research misconduct determination," but concluded that even were she "to accept the truth of the assertions and validity of the documents [that Frech] submitted, they would not be dispositive, particularly in light of the countervailing factors discussed in [the] charge letter that contraindicate [Frech's] present responsibility." AR 4944 ¶ 200. Nothing more was needed. *See Brodie*, 796 F. Supp. 2d at 156 (debarment reasonable as agency "considered both aggravating and mitigating factors in determining that [debarment] was in the public interest").

In essence, Frech asks this Court to reweigh the evidence and make a de novo finding of present responsibility, a task well outside a court's "narrow" role under the arbitrary and capricious standard. *State Farm*, 463 U.S. at 43. In undertaking such review, "a court is not to substitute its

judgment for that of the agency." *Id.* By arguing that her activities after her misconduct compel a finding of present responsibility, Frech "seeks to expand the court's limited standard of review." *Burke*, 127 F. Supp. 2d at 241. Yet in reviewing a debarment decision, a court "can neither perform a de novo review of the record nor substitute [its own] judgment for that of agency officials." *Id.* (citation omitted). The Debarring Official "evaluated each mitigating factor that [Frech] raised," and her decision evinces her "assessment of each factor and the relative weight assigned to each factor." *Id.* (emphasis omitted). Even if there "are some aspects of the record that support [Frech's] position," the Debarring Official's "determination that such evidence is outweighed by other evidence in the record is reasonable and must be upheld under the applicable standard of review." *Id.*; *see also* Hr'g Tr. at 48:24-49:1 (Defendants have "raised reasonable questions as to whether Frech, in fact, engaged in [Service]-funded research while working in Dr. Zhan's . . . laboratory."). And while Frech quibbles with various aspects of the Debarring Official's analysis, the Debarring Official considered and reasonably addressed each point that Frech raises, as explained below.

Frech asserts, for example, that she disclosed Utah's misconduct findings and the Office's ongoing investigation to Iowa, but the Office explained that this assertion was "supported only by her [own] assertion and an undated, unsigned document titled 'Oversight and Research Monitoring Plan.'" AR 4945 ¶ 204. Frech emphasizes that she made this claim in a declaration under penalty of perjury, but "[a] single declaration . . . is not particularly strong evidence, especially when the declarant has not shown herself to be an entirely reliable narrator." *Campbell v. Schmidt*, Civ. A. No. 20-1785 (CRC), 2020 WL 6445874, at *12 (D.D.C. Nov. 3, 2020); *see also SEC v. Behrens*, Civ. A. No. 08-0013, 2011 WL 6884801, at *3 (D. Neb. Dec. 29, 2011) (affidavit had "very little weight in light of" the affiant's "reputation for dishonest behavior"). An agency "is not foreclosed from noting . . . that it accepts certain contentions or rejects others." *Comm. for Nuclear Resp. v.*

*Seaborg*, 463 F.2d 783, 787 (D.C. Cir. 1971); *see also Nw. Immigr. Rts. Project v. USCIS*, 496 F.
Supp. 3d 31, 75 (D.D.C. 2020) ("agencies need not accept uncritically any evidence submitted").
Thus, "an agency may entirely reject . . . or discount the weight of affidavits as appropriate," *Sault
Ste. Marie Tribe of Chippewa Indians v. Haaland*, 659 F. Supp. 3d 33, 51 (D.D.C. 2023), *aff'd*,
No. 23-5076, 2024 WL 3219481 (D.C. Cir. June 28, 2024) (cleaned up), especially one containing
"self-serving statements" by an interested party, *MomoCon LLC v. SBA*, Civ. A. No. 21-2386 (RC),
2023 WL 8880335, at \*6 (D.D.C. Dec. 22, 2023). And Frech submitted no corroboration for her
claim, such as a declaration by Zhan. It was reasonable of the Debarring Official to discount her
declaration given its self-serving nature, lack of corroboration, and her history of dishonesty.

Frech likewise challenges the Office's finding that she had "not been transparent about her
involvement with federally funded research while working in the Zhan laboratory," AR 4945
¶ 205, but that finding, too, is sound. Frech asserted she "neither sought, received, nor participated
in research supported by [Service] funding since leaving [Utah] in 2013." *Id.* "In fact, [she] was
listed as an author on several research papers from the Zhan Laboratory published in 2017-2021
that cite [National Institutes of Health] funding as supporting the published research, and her
reported author contributions included performing, designing, and supervising experiments and
analyzing data." *Id.* ¶ 206. "And [Frech] was listed as research scientist or Senior/Key Personnel
on three grant applications submitted to [National Institutes of Health] in 2016-2018." *Id.*; *see also
Off. of Res. Integrity v. Bois*, No. C-10-436, at \*3 (Dep't App. Bd. Nov. 2, 2010), ECF No. 23-7
(debarment respondent's "claims ring hollow in light of his own published acknowledgments that
[federal] money funded his research in both of the cited instances" (emphasis omitted)).

Facing these facts, Frech insists she "explained the details behind every instance in which
her name appeared in research papers originating from Dr. Zhan's lab and why her participation

did not involve [Service] funding," Pl.'s Mem. at 29, but the Debarring Official was not obligated to credit her unpersuasive explanations. Frech argues that in some cases, Zhan's lab had received federal funds—and the funding ended (or she thought it did)—before she joined the lab; in other cases, the lab received federal funds only after she had left; and that in other cases still, she did not work on aspects of the research that received federal funding. AR 4805-09. But she submitted no evidence to support any of these claims—only a letter containing "assertions of counsel," which are "not evidence," so the Debarring Official was not obliged to credit them. *Brown v. INS*, 775 F.2d 383, 388 (D.C. Cir. 1985); *see also Sierra Club v. EPA*, 292 F.3d 895, 901 (D.C. Cir. 2002) ("mere allegations in [a] brief . . . are not evidence" (cleaned up)). And even crediting these assertions, Frech admits that she worked on three papers supported by a federal grant (1) that was re-awarded only one year before she joined the lab, (2) for which she believed the lab already had reapplied by the time she joined it, and (3) that she is not certain had ended by the time she joined the lab. AR 4807. Last, in any event, Frech "does not deny that she used equipment and materials that the laboratory had procured using [Service] funds back when those grants were active," which the Debarring Official reasonably considered to involve the use of federal funds. AR 4946 ¶ 208.

Frech argues that Defendants have not "offered any evidence contradicting" her account of her tenure at Zhan's lab, Pl.'s Mem. at 30, but that argument reverses the burden of proof. Frech bore the burden to demonstrate present responsibility, *see* 2 C.F.R. § 180.855(b), and argues that her tenure at Zhan's lab shows that she is presently responsible. She thus has the burden to prove that her account of her tenure at the lab is accurate. Defendants have no burden to prove otherwise.

Frech's next argument is audacious: "even if" she "participated in covered transactions, including [Service]-funded transactions, following her departure from" Utah, she says, that would only make her debarment even "more arbitrary, not less." Pl.'s Mem. at 31. That is because, she

- 17 -

says, it would mean that she "has been prolifically engaged in federally funded scientific research for years since" her misconduct without "one allegation, let alone a scintilla of evidence, that [she] engaged in any malfeasance." *Id.* There are two flaws in this argument. First, it would not change the fact that Frech still was not "transparent about her involvement with federally funded research while working in the Zhan laboratory." AR 4945 ¶ 205. Indeed, it would mean she continues to be uncandid about it to this day, which would only confirm her lack of present responsibility. Second, as the Office explained, the mere fact that she has not been accused of or found to have committed misconduct in Zhan's lab does not prove that she committed no misconduct while there. AR 4946-47 ¶ 214 ("The absence of any allegations does not mean the absence of misconduct; [the Office] has not examined her conduct" in Zhan's lab); *see also Sabino Canyon Tours, Inc. v. Forest Serv.*, 298 F. Supp. 3d 60, 70 (D.D.C. 2018) (the "absence of evidence is not proof of absence").

Next, Frech attacks what she calls the Debarring Official's "refusal to consider certain mitigating factors," Pl.'s Mem. at 36 (cleaned up), but the Debarring Official made clear that she considered all these factors. The Debarring Official "commend[ed]" Frech's "contributions to the community and acknowledge[d] the character references [that she] presented," but did "not find these activities and statements to be relevant to the underlying debarment cause and wrongdoing at issue, which is research misconduct." AR 4953. She thus did "not find that any of these activities and character references, or purported good conduct, are appropriate to diminish Dr. Frech's period of debarment or its length." *Id.* In short, the Debarring Official considered all the facts that Frech presented, but simply weighed them differently than Frech would have liked. That does not render her decision arbitrary or capricious. *See State Farm*, 463 U.S. at 43; *Burke*, 127 F. Supp. 2d at 241.

Frech's counterarguments are unpersuasive. She stresses character references from Mercy Hospital's Chief Compliance Officer and Zhan, *see* Pl.'s Mem. at 37-38, but the Debarring Official

did not need to defer to these character references. *See Brodie*, 796 F. Supp. 2d at 156 (affirming seven-year debarment term where agency "considered and rejected as irrelevant . . . the fact that some of Plaintiff's current colleagues considered him to be honest"). The Debarring Official considered these submissions, but concluded that they were not dispositive to the debarment issue. AR 4953. That was reasonable, especially in light of the aggravating factors that the Debarment Official considered, including the frequency of Frech's misconduct, the actual or potential harm or impact that results or may result from her misconduct, Frech's sole responsibility, her failure to accept responsibility, and the fact that Frech's most recent job "appeared to include responsibilities adjacent to covered transactions" and "Frech wishes to return to this position," meaning that "she still presents a risk." AR 4950-53. Given these facts evincing Frech's lack of present responsibility, the choice to not defer to Frech's character references was not arbitrary or capricious. *See State Farm*, 463 U.S. at 43; *Burke*, 127 F. Supp. 2d at 241; *Brodie*, 796 F. Supp. 2d at 156.

Last, Frech cites the Debarring Official's remark that her charitable activities and character references are not "relevant" to the debarment decision as evidence that the Debarring Official ignored these factors, *see* Pl.'s Mem. at 37-38, but context shows otherwise. An agency's "decision need not be a model of clarity," *Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717 (D.C. Cir. 2006), and a court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *State Farm*, 463 U.S. at 43. The Debarring Official's use of the word "relevant" does not mean she failed to consider Frech's charitable activities and character references. Rather, context makes clear that the Debarring Official considered these facts but did not deem them dispositive. She expressly accounted for "these activities and character references" and "purported good conduct," but found that they did not make it "appropriate to diminish [the] period of debarment or its length." AR 4953. Her use of the term "relevant" at most "is the type of

isolated lapsus linguae to which [courts] regularly have declined to give dispositive weight" in reviewing agency action. *Loja-Tene v. Barr*, 975 F.3d 58, 61 n.2 (1st Cir. 2020); *see also Campbell*, 2020 WL 6445874, at *9 (declining to vacate debarment notice "of less than ideal clarity").

And even assuming that the Debarring Official ignored these facts, rather than just giving them little weight, any such error would be harmless. The APA instructs that "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. "In administrative law," then, "there is a harmless error rule," *RadNet Mgmt v. NLRB*, 992 F.3d 1114, 1124 (D.C. Cir. 2021), "requir[ing] the party asserting error to demonstrate prejudice from the error." *Combat Vets. for Cong. Pol. Action Comm. v. FEC*, 795 F.3d 151, 157 (D.C. Cir. 2015) (quotation marks omitted). "The party claiming injury bears the burden of demonstrating harm; the agency need not prove its absence." *Id.* An error is harmless "[i]f the agency's mistake did not affect the outcome." *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). The Debarring Official made clear that she did not think these facts warranted reducing Frech's penalty. Any error in ignoring these facts thus "had no bearing on . . . the substance of the decision reached," so "a remand would be pointless." *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 930 (2025); *see also Calcutt v. FDIC*, 598 U.S. 623, 629 (2023) (remand unnecessary if it would be "an idle and useless formality").

### D.    Defendants Addressed the Time That Elapsed From Frech's Misconduct

The Debarring Official considered the time that elapsed since Frech's research misconduct and reasonably explained why a three-year debarment nonetheless was appropriate. The Office explained that as recently as September 2024, Frech still refused to acknowledge that she had acted knowingly and intentionally, and thus, did not take responsibility for her actions. AR 4941 ¶¶ 179-84, 4943 ¶ 197; *see supra* § I. It "considered the length of time elapsed, but found, on balance, that debarment was still appropriate because of [the] countervailing factors discussed in [the] charge letter, including [Frech's] failure, even today, to accept responsibility for and recognize the

seriousness of her misconduct." AR 4944 ¶ 199. In short, despite the time that had elapsed since Frech's misconduct, she still refused to take responsibility for acting knowingly and intentionally, and thus still lacked present responsibility. That conclusion was not arbitrary or capricious.

The cases that Frech cites for her contrary position are inapposite. In each of these cases, the agency failed altogether to consider how the time that elapsed since the charged misconduct impacted the plaintiff's present responsibility. *See Canales v. Paulson*, Civ. A. No.06-1330, 2007 WL 2071709, at *6 (D.D.C. July 16, 2007) (agency "fail[ed] to address in any detail" "the fact that five years had passed without incident since [plaintiff's] offense"); *Silverman v. Dep't of Def.*, 817 F. Supp. 846, 849 (S.D. Cal. 1993) (noting agency's "admitted refusal to consider" the "period of six years following the events underlying [plaintiff's] conviction"); *Roemer v. Hoffmann*, 419 F. Supp. 130, 132 (D.D.C. 1976) (agency failed to explain "why" it "attributed little or no importance to" "the length of time which has passed since the offense"). More on-point are cases where a court affirmed a debarment despite the passage of time since the charged misconduct because the agency considered the passage of time, but still found that the plaintiff lacked present responsibility due to their ongoing failure to acknowledge their misconduct. *See Uzelmeier*, 541 F. Supp. 2d at 248 (agency reasonably found that plaintiff lacked present responsibility even though seven years had passed since it learned of the misconduct as "plaintiff has admitted no past wrongdoing"); *Burke*, 127 F. Supp. 2d at 237, 241-42 ("failure to take personal responsibility for his offense" supported debarment despite the "time that had elapsed" since plaintiff's misconduct five years earlier).

Because the Debarring Official considered the passage of time and reasonably explained why it did not undercut the need for debarment, Defendants were not obliged to explain why the decision took so long to issue. The time gap between Frech's misconduct and debarment is relevant only to the question of Frech's present responsibility—it has no other relevance. *See* Hr'g Tr. at

51:1 (noting time gap's "obvious relevance to Dr. Frech's present responsibility"); Pl.'s Mem. at

21 (acknowledging "that no statute or regulation mandates that a debarment action be taken within

a specified time" (emphasis omitted)); *Uzelmeier*, 541 F. Supp. 2d at 248 (finding "no statute or

regulation which would mandate that the debarment proceeding have been dismissed as untimely"

and explaining that gap in time is relevant only to plaintiff's "present responsibility"); *Canales*,

2007 WL 2071709, at *7 (gap in time was relevant only to plaintiff's "present responsibility");

*Silverman*, 817 F. Supp. at 849 (same); *Roemer*, 419 F. Supp. at 132 (same). Having explained

why Frech's debarment was appropriate notwithstanding the passage of time, no statute, rule, or

administrative law principle required Defendants to explain the reason for the gap in time.

  Regardless, Defendants reasonably explained the gap in time between Frech's misconduct

and her debarment. The Debarring Official explained that the "time [that] has elapsed since [Frech]

committed her research misconduct" was "[d]ue to the large and growing volume of [the Office's]

responsibilities relative to its staffing levels." AR 4944 ¶ 199. Buttressing this explanation is a

declaration from the then-Director of the Office's Division of Investigative Oversight explaining

that the Office "receives several hundred allegations each year," "has a staff of about six to eight

scientist-investigators devoted to oversight review of institutional proceedings," and has operated

at about the same staffing level "[o]ver the past decade." AR 4820-21 ¶¶ 7-8; *see also* Hr'g Tr. at

60:8-12 ("The delay could very well reflect the fact that the office, like many agencies, is

understaffed and inundated with complaints. Indeed, . . . lengthy delays are not abnormal").

Although Frech may be dissatisfied with this explanation, her assertion that Defendants failed to

explain the reason for the gap in time is incorrect. Equally incorrect is Frech's assertion that "there

is not one shred of evidence that connects the substantial delay in debarring [her] to [the Office's]

staffing levels, or any other factor." Pl.'s Mem. at 24. To the contrary, the Office expressly linked the gap in time to its staffing levels and volume of investigative responsibilities. AR 4944 ¶ 199.

The time that elapsed between Frech's misconduct and her debarment is regrettable. That is particularly so given how much work the Office had done on this matter by November 21, 2017, when it and Frech were engaged in ultimately fruitless settlement discussions. Although the Office, like many agencies, must confront growing workloads with limited staffing levels, it is important to resolve pending matters as soon as reasonably is practicable under the circumstances in order to provide closure to affected persons. The Office could have done a better job to keep this matter moving, both before and after the settlement discussions, and will endeavor to do so in the future. But Defendants reasonably explained why the passage of time did not undermine the need for a three-year debarment term, and whether or not required to do so, they also explained the reason for this gap in time. Frech, moreover, was not wholly without recourse during this period. She was aware that her case remained pending before the Office, and could have sought to compel it to make a final decision more quickly if she wanted. *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *id.* § 706(1) (court can "compel agency action unlawfully withheld or unreasonably delayed"); *Telecommc'ns Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (court can consider "a claim of unreasonable delay"). Under these circumstances, the gap in time between Frech's misconduct and debarment does not merit vacatur.

### E.    Frech's Argument that Utah's Findings Give Her Reasonable Grounds to Deny that She Acted Knowingly and Intentionally is Meritless

Last, Frech's insistence that Utah's findings give her "reasonable" grounds to deny that she acted knowingly and intentionally, Pl.'s Mem. at 18, misstates the issue. The question under the APA is just whether the Debarring Official's finding that Frech acted knowingly and intentionally

was reasonable, not whether Frech has reasonable grounds to argue otherwise. *See Jackson*, 808 F.3d at 936 ("The question is not what we would have done, nor whether we agree with the agency action," only "whether the agency action was reasonable and reasonably explained"). Indeed, the APA presupposes that sometimes more than one finding can be reasonable, and requires deference to an agency's reasonable finding even if a different finding also would have been reasonable. *See Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 394 (D.C. Cir. 2020) ("While adopting [another] approach" might "have been a reasonable option, that is not enough to prevail under the deferential [APA] standard"); *Hi-Tech Furnace Sys., Inc. v. FCC*, 224 F.3d 781, 792 (D.C. Cir. 2000) (court's "mandate is only to ensure that the agency's determinations are themselves reasonable, regardless of whether there may be other 'better and fairer' alternatives"). Because the Debarring Official's finding that Frech acted knowingly and intentionally is reasonable, it does not matter whether, as Frech claims, she has a reasonable basis to deny that she acted knowingly and intentionally. The Debarring Official was not obliged to defer to Utah's findings, and reasonably explained why she made different findings—the Office considered additional evidence that Utah did not address.

Initially, the Debarring Official was not obligated to defer to Utah's findings. The Office is entitled to conduct additional analyses, develop evidence, and make its own research misconduct findings separate from and independent of an institution's findings. *See* 42 C.F.R. §§ 93.400(a)(7), 93.403(d)-(g), 93.404(a); *Bois v. Dep't of Health & Hum. Servs.*, Civ. A. No. 11-1563 (ABJ), 2012 WL 13042904, at *2 (D.D.C. Mar. 2, 2012) (Office "conducted additional analysis"); *Brodie v. Dep't of Health & Hum. Servs.*, 715 F. Supp. 2d 74, 77 (D.D.C. 2010); (Office can "make its own independent determination as to whether misconduct occurred"); *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 171 (1st Cir. 2016) (Office has "authority to obtain additional input from virtually any source, supplement the evidence, and develop its own analysis").

The Office reasonably explained why it made a different finding as to Frech's degree of culpability than Utah—it considered additional evidence that Utah did not address. AR 4925 ¶ 46; *cf. New England Power Generators Ass'n, Inc. v. Fed. Energy Regul. Comm'n*, 879 F.3d 1192, 1201 (D.C. Cir. 2018) (agency is not bound by "earlier" findings "in the face of new or additional evidence"). The Office reasonably found, based on its scientific expertise, independent review, and additional analyses, that Frech acted knowingly and intentionally, and was not obliged to defer to Utah. *See* Hr'g Tr. at 46:19-24 ("the office was not required to defer to the Utah panel's findings as it was empowered to investigate and reach its own conclusions so long as [they] are supported by substantial evidence . . . Whether the Utah panel reached the same result is immaterial").

Frech argues that Utah in fact considered all the evidence that the Office considered, *see* Pl.'s Mem. at 18-19, but in each example that she cites, the Office either considered more evidence than Utah considered or else reached the same conclusion as Utah on the relevant question.

*First*, Frech stresses that Utah's Investigating Committee, like the Office, considered the allegations that figures 2Aii and 5 of the November 2011 Article were intentionally manipulated, *see* Pl.'s Mem. at 19, but the Investigating Committee found that these figures were deliberately mislabeled. AR 978-80 (figures 2Aii and 5 were "deliberately mislabeled in order to show the results desired by the authors," which "suggests . . . the labeled film is falsified" and "most likely represent a falsification of data" or "fabrication"). While Utah did not find that Frech, specifically, was the person who falsified and/or fabricated these two figures, the Office reasonably explained its finding that Frech was the person who committed these actions: she was the first author of the November 2011 Article and twice admitted to generating the figures. AR 4936 ¶¶ 133-34.

*Second*, Frech notes that Utah's Panel, like the Office, considered that the November 2011 Article "contained several instances of flipped or mislabeled images," AR 4048, but it did not

address additional facts that the Office considered—i.e., that the images also showed "duplication" and "contrast adjustment." AR 4936 ¶ 137. Based on these facts, the Office reasonably found that the misconduct was knowing and intentional, not merely reckless. *Id.* ¶ 140. And notably, the Panel misstated the Investigating Committee's actual findings. The Panel erroneously asserted that the Investigating Committee did not find "that these irregularities were intentional." AR 4048. That is incorrect: the Investigating Committee did find that these errors were intentional, AR 978-90.

*Third*, Frech stresses that Utah's Investigating Committee, like the Office, considered "the pattern of" her behavior, Pl.'s Mem. at 19 (emphasis omitted), but the Panel did not address this pattern. AR 4045-50. Frech argues that the Panel must have considered the pattern of her behavior, even though the Panel never mentioned this fact, because it cited the Investigating Committee's report as one of "[t]he principal items of evidence" that it considered, AR 4047. But the Office's finding that the Panel did not consider this fact was reasonable given the Panel's failure to address this fact. The Office was not compelled to find that the Panel had indeed considered this fact simply because the Investigating Committee had considered the fact and the Panel said it considered the Investigating Committee's report. *See Chen v. Att'y Gen.*, 546 F. Supp. 1060, 1064 (D.D.C. 1982) (agency "gave no indication of having actually considered [certain information] in the record").

*Fourth*, Frech rejects as "mere speculation" the idea "that the [Panel] did not consider her [July 12, 2012,] email" to Utah's Research Integrity Officer admitting that she generated certain figures, but the Panel's report does not address this email, AR 4045-50, as the Office noted, AR 4927 ¶ 62. Frech notes that the Research Integrity Officer "wrote to" the Panel, Pl.'s Mem. at 20, but that does not mean that he shared Frech's email with the Panel. Indeed, the Research Integrity Officer's memorandum to the Panel did not mention Frech's email, AR 3853-62, and there is no other ground to assume that he shared the email with the Panel. And even assuming, for argument's

- 26 -

sake, that the Research Integrity Officer shared Frech's email with the Panel, nothing in the Panel's report indicates that it considered this email. AR 4927 ¶ 62; *see also Chen*, 546 F. Supp. at 1064.

Frech also downplays the email, insisting that the email "did not admit that she manipulated any images," Pl.'s Mem. at 20 (emphasis omitted), but the email speaks for itself—it admits that Frech "generated" an image and that "the duplication came from me." AR 763. "Frech's admission alongside her lead role supports the conclusion that she was responsible for the fabrications." Hr'g Tr. at 44:13-15. The Office reasonably "weighed this evidence in concluding that [she] was the one who intentionally and knowingly manipulated [an] image." AR 4927 ¶ 62.

## II.   **Frech's Challenges to the Debarring Official's "Sole Responsibility" Finding Fail**

In determining whether debarment is warranted, an agency may consider "[w]hether and to what extent [a person] planned, initiated, or carried out the wrongdoing." 2 C.F.R. § 180.860(f). The Debarring Official's finding that Frech was solely responsible for the charged misconduct is not arbitrary or capricious. And regardless, any error in the Debarring Official's sole responsibility finding would be harmless because the Debarring Official made clear that she would have imposed the same term of debarment whether or not Frech was solely responsible for the misconduct.

### A.   **The "Sole Responsibility" Finding Was Not Arbitrary or Capricious**

The Debarring Official reasonably explained the basis for her "sole responsibility" finding. As the Office explained, the evidence in the record did "not show that anyone else contributed to [Frech's] intentional and knowing research misconduct in the three papers at issue." AR 4942 ¶ 187. While Utah's Investigating Committee "found that Dr. Kaplan, as the laboratory's leader, was lax in his oversight of and systematically failed in supervising [Frech], it also 'found no evidence that [he] directly contributed to the misrepresentation or manipulation of data.'" *Id.* (alterations in original, citing AR 967). The Investigating Committee likewise was "struck by the conspicuous failure of all coauthors, particularly Drs. Ward and Kaplan, to catch and correct these

- 27 -

mistakes before publication," but the Office reasonably determined that "[t]he fact that Dr. Kaplan was lax in his oversight and that Drs. Ward and Kaplan should have caught [Frech's] falsifications and/or fabrications does not render them culpable for, or mean that they assisted [her] plan, initiate, or carry out, her research misconduct." *Id.* (citing AR 965). Indeed, Frech does "not claim, and [the Office] found no evidence, that anyone else assembled the figures that are the subject of [the Office's] findings or otherwise intentionally falsified or fabricated those figures." *Id.* And as the Office observed, "the [Utah] investigation revealed no evidence indicating that anyone else was responsible for committing the research misconduct found by [the Office]." *Id.*

Frech offers two arguments, but neither is persuasive. *First*, Frech insists that she "was not solely responsible for the errors" because "Dr. Kaplan, Dr. Ward, and others all also had varying degrees of responsibility." Pl.'s Mem. at 32. But the Office reasonably found that these other lab members did not commit the same misconduct because they did not share her level of culpability. AR 4942 ¶ 187. Frech knowingly and intentionally falsified and/or fabricated figures, the Office explained, whereas the evidence established only that lab members perhaps failed to supervise her properly or discover her misconduct. *Id.* Those lab members at worst were negligent or reckless, whereas Frech's misconduct was knowing and intentional, *id.*, which is more culpable, *see Bailey*, 444 U.S. at 404; *Short*, 87 F.4th at 611. Notably, Frech does not argue that anyone else knowingly or intentionally fabricated or falsified any of the same images that the Office found that she knowingly and intentionally fabricated or falsified. The Debarring Official's finding that she is solely responsible for her knowing and intentional misconduct thus is not arbitrary or capricious.

*Second*, Frech faults the Office for failing to investigate Ward, whom Utah's Investigating Committee found to have "splic[ed]" images in her own research, Pl.'s Mem. at 33-34, but that

argument fails for two reasons. The decision to not open a debarment investigation is committed to agency discretion, and the Office had legitimate reason to investigate Frech but not Ward.

1.     The Decision to Not Investigate Ward is Committed to Agency Discretion

The APA does not apply if "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "An agency generally cannot act against each technical violation of the statute it is charged with enforcing," and its "decision not to . . . enforce" is "generally committed to [its] absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). That is due "to the general unsuitability for judicial review of agency decisions to refuse enforcement." *Id.* "[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," such as "whether agency resources are best spent on this violation or another" and "whether the agency has enough resources to undertake the action at all." *Id.*

"Under the rationale of *Chaney*," a "decision not to initiate debarment proceedings against certain [individuals] is unreviewable." *Kisser v. Cisneros*, 14 F.3d 615, 620 (D.C. Cir. 1994). As this Court put it, "an agency's decision not to take debarment action falls within its unreviewable prosecutorial discretion." *Campbell*, 2020 WL 6445874, at *11. The choice to not investigate Ward "was an exercise of unreviewable prosecutorial discretion," so the Office "need not 'demonstrate consistency in exercising its discretion'" on whether to investigate or pursue "debarment actions" against Frech and Ward. *Id.* (quoting *Kisser*, 14 F.3d at 619 n.5). For that reason alone, Frech's argument that the Office's failure to investigate Ward was arbitrary or capricious fails. *Id.*

2.     The Office Had a Legitimate Reason to Investigate Frech But Not Ward

In any event, the Office has a legitimate explanation for investigating Frech but not Ward: Utah made no finding of research misconduct against Ward. "[A]n agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005). The Office receives and reviews an institution's

investigative record to determine whether the institution satisfied its regulatory responsibilities. 42 C.F.R. §§ 93.400(a)(6), 93.403. Utah made a finding of research misconduct against Frech, but made no such finding against Ward. AR 966 (Investigating Committee), 4050 (Panel). Given its large volume of research misconduct allegations to investigate and limited staffing levels, AR 4944 ¶ 199; AR 4820-21 ¶¶ 7-8, the Office reasonably chose to investigate the only individual as to whom Utah made a finding of research misconduct: Frech. *Cf. Kisser*, 14 F.3d at 620 (court cannot "compare final agency action with agency decisions not to institute enforcement proceedings").

Frech complains that Utah did not investigate Ward, but that complaint properly is directed against Utah, not against the Office, which acted reasonably given that Utah found only Frech, not Ward, to have committed research misconduct. "Having properly explained why it" investigated Frech but not Ward, the Office "met the standard for reasoned decision-making." *Env't Def. Fund v. EPA*, 124 F.4th 1, 17 (D.C. Cir. 2024); *see also Nasdaq Stock Mkt. LLC v. SEC*, 38 F.4th 1126, 1141 (D.C. Cir. 2022) (no error where agency "provided an adequate explanation" for its different treatment of two different types of entities). Notably, Frech does not allege—and no evidence in the record shows—that Ward knowingly and intentionally fabricated or falsified any of the same images or figures that the Office found Frech knowingly and intentionally fabricated or falsified.

Frech's final argument mischaracterizes Defendants' position. The Office did not find, as she inaccurately argues, "that [her] splicing of western gel blots in research publications constitutes knowing and intentional research misconduct, but Dr. Ward's splicing of western blot images does not." Pl.'s Mem. at 35. Rather, the Office never investigated Ward at all, and thus made no finding either way as to whether Ward knowingly and intentionally engaged in research misconduct.

## B.     Any Error in the "Sole Responsibility" Finding Was Harmless

Any error in the Debarring Official's "sole responsibility" finding is harmless. The Office stated that "[e]ven if [Frech] were not solely responsible for committing the research misconduct

found by [the Office], this would not affect the proposed three-year debarment term." AR 4942 ¶ 189. The Debarring Official likewise stated that "even if Dr. Frech were not solely responsible for committing the research misconduct found by [the Office], this would not affect the proposed three-year debarment term." AR 4952. Because the "sole responsibility" finding "did not affect the outcome," it was harmless, and thus cannot furnish a basis to vacate Frech's debarment. *PDK Lab'ys*, 362 F.3d at 799; *see also Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*, 783 F.3d 1301, 1327 (D.C. Cir. 2015) (agency error harmless if nothing would have been "done differently"); *compare Prairie State Generating Co. LLC v. Sec'y of Lab.*, 792 F.3d 82, 94 (D.C. Cir. 2015) (agency's failure "to consider [certain] information" was harmless because the party "failed to explain how admission of such evidence . . . might have changed the [ ] decision").

## III.    The Debarring Official's Determination that Frech's Misconduct Was "Serious and Compelling" Enough to Warrant Debarment is Not Arbitrary or Capricious

The Debarring Official's determination that Frech's research misconduct was "serious and compelling" enough to merit debarment, 2 C.F.R. § 180.800(d), is not arbitrary or capricious, either. The Office found that Frech's misconduct was knowing and intentional; her ongoing refusal to acknowledge this fact evinced a lack of present responsibility; she solely planned, initiated, and carried out the misconduct at issue; and her misconduct was not merely an isolated event, but part of a pattern spanning several years and three Service-funded papers. AR 4941-43 ¶¶ 179-90.

The Office further found that Frech's "research misconduct had a significant impact on the proposed and reported research record, other researchers, institutions, and the public health or welfare," AR 4943 ¶ 191, which is an aggravating factor for debarment, *see* 2 C.F.R. §180.860(a). The Office found that "[r]esearch misconduct undermines the integrity of the scientific community and can lead to severe and irreparable harm," and that "[t]he consequences of research misconduct include losing public trust in science; wasting of public funds and resources; harming the research

- 31 -

record; distorting the research process; and even adversely impacting public health and safety." AR 4943 ¶ 192. The Office further found that Frech's "falsified and/or fabricated research results were included in three (3) [Service]-supported published papers and utilized funds that [the Service] otherwise could have spent on research that was not falsified or fabricated," and also "led to retraction of two (2) published papers and [the Office's] finding that an additional paper should be retracted or corrected." *Id.* ¶¶ 193-94. And because one of Frech's research findings "would have been considered a significant and exciting finding in the field on which other basic and clinical researchers would and/or did follow up" had it been true, the Office found, her "fabricated and/or falsified research papers led to waste of valuable time and resources." *Id.* ¶ 195. Last, the Office found that the publications containing Frech's falsified and/or fabricated research "have been cited by others" at least "142 times in the scientific literature." *Id.* ¶ 196; *see also Brodie*, 796 F. Supp. 2d at 156 (affirming seven-year debarment where the misconduct at issue was "extremely serious, numerous, and striking" because, in relevant part, it "determined that the misconduct had a substantial impact on several grant applications and journal articles" (quotation marks omitted)).

The Debarring Official, in turn, considered these factors in finding that Frech's misconduct was serious and compelling enough to merit a three-year debarment. AR 4950-54. Given all this, the finding that Frech's misconduct was serious and compelling was not arbitrary or capricious. *See State Farm*, 463 U.S. at 43; *Burke*, 127 F. Supp. 2d at 241; *Brodie*, 796 F. Supp. 2d at 156.

Frech's only response—that her misconduct cannot be serious and compelling because the Office took so long to debar her, *see* Pl.'s Mem. at 38-41—is meritless. The gap in time between Frech's misconduct and debarment has nothing to do with the gravity of her misconduct. Certainly, it does not change the facts that Frech's misconduct was knowing and intentional, that she refuses to this day to admit that she acted knowingly and intentionally, that she was solely responsible for

her misconduct, that her misconduct reflected a sustained pattern of behavior spanning several years and multiple papers rather than an isolated event, and that her misconduct has a significant effect on the scientific community. Nor does the time gap mean that the Debarring Official did not regard Frech's misconduct as serious and compelling. The Office explained that the time gap was due to its high volume of research misconduct allegations to investigate and limited staffing levels, and that Frech's continuing refusal to acknowledge that she acted knowingly and intentionally evinces an ongoing lack of present responsibility notwithstanding the gap in time. *See supra* § I.D.

**IV.    The Privacy Act Precludes APA Relief Because It Provides an Adequate Remedy**

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review" under the APA. 5 U.S.C. § 704. Frech's debarment and the research misconduct findings against her are not "made reviewable by statute," so APA relief is available to her only if "there is no other adequate remedy in a court." *Id.* The APA's "other adequate remedy" bar ensures that it does not "duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The D.C. Circuit, "in determining whether an adequate remedy exists, has focused on whether a statute provides an independent cause of action or an alternative review procedure." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). An "alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (cleaned up).

The Privacy Act provides protections and remedies to a person challenging her debarment and misconduct findings against her. The Privacy Act allows a person to "request amendment of a record pertaining to [her]" in an agency's system of records and requires an agency "promptly" to "make any correction to any portion thereof which the individual believes is not accurate, relevant, timely, or complete" or else explain its refusal to do so. 5 U.S.C. § 552a(d)(2)(B). The agency must

- 33 -

also "permit [an] individual who disagrees with the refusal of the agency to amend [her] records to request a review of such refusal," and to "complete such review and make a final determination" within thirty business days (or longer, but only "for good cause shown"). *Id.* § 552a(d)(3). Should the agency still refuse to amend the record, the individual then may "file with the agency a concise statement setting forth the reasons for [her] disagreement with the refusal." *Id.* The agency must "clearly note any portion of the record which is disputed and provide copies of the statement . . . to persons or other agencies to whom the disputed record has been disclosed." *Id.* § 552a(d)(4).

The Privacy Act also imposes broad, general duties on agencies to ensure the accuracy of any records on individuals that they maintain. The Privacy Act requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). And "prior to disseminating any record about an individual to any person other than an agency—unless the dissemination is made pursuant to," the Freedom of Information Act—an agency must "make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." *Id.* § 552a(e)(6).

Finally, the Privacy Act provides a cause of action to enforce these requirements. 5 U.S.C. § 552a(g)(1). If an agency decides "not to amend an individual's record in accordance with [her] request, or fails to make such review," a court "may order the agency to amend the individual's record in accordance with his request or in such other way as [it] may direct." *Id.* § 552a(g)(1)(A), (2)(A). If an agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is

adverse to the individual" in an "intentional or willful" way, a court shall award "actual damages sustained by the individual as a result of the refusal or failure," but in no event less than $1,000. *Id.* § 552a(g)(1)(C), (4)(A). It also can award attorney's fees and costs. *Id.* § 552a(g)(2)(B), (4)(B).

The Privacy Act thus provides an "adequate remedy" to a person challenging her debarment and misconduct findings against her, thus precluding APA relief. 5 U.S.C. § 704. It contains both of the elements that the D.C. Circuit "focuse[s] on" in determining whether a remedy is adequate: "an independent cause of action" and "an alternative review procedure," *El Rio*, 396 F.3d at 1270.

Indeed, the D.C. Circuit squarely has held that the Privacy Act is an "adequate remedial mechanism[ ]" that precludes a *Bivens* action by an individual challenging her debarment. *Liff v. Off. of Inspector Gen.*, 881 F.3d 912, 917-18, 921-24 (D.C. Cir. 2018). That is so, the D.C. Circuit explained, even if "the Privacy Act does not provide a complete remedy for the injury [the plaintiff] alleges" because the plaintiff "could not challenge [the] debarment under the Privacy Act" and the records at issue are not records "to which the Privacy Act applies" at all. *Id.* at 923. That is because "[t]he Privacy Act represents Congress's legislative judgment about the appropriate remedies with respect to the accuracy, fairness, and use of government information, and the judicial system is not in a position to revise that scheme by recognizing an additional constitutional remedy for that kind of claim." *Id.* While *Liff* addressed a *Bivens* claim rather than an APA claim, its reasoning applies with equal force in the APA context given the similarity of the *Bivens* doctrine's "adequate remedial mechanisms" inquiry, *id.* at 918, to the APA's "other adequate remedies" bar, 5 U.S.C. § 704; *see also Thomas v. Fed. Aviation Admin.*, Civ. A. No. 05-2391 (CKK), 2007 WL 219988, at *3 (D.D.C. Jan. 25, 2007) (equating *Bivens* doctrine's adequate remedy bar with APA's adequate remedy bar); *M Nicolas Enters., LLC v. United States*, No. 20-691C, 2022 WL 558043, at *3 (Fed. Cl. Feb. 23, 2022) ("As with APA claims, *Bivens* claims are unavailable where alternative remedies exist.").

Courts unsurprisingly have held that the Privacy Act offers an adequate remedy to plaintiffs who raise APA claims like Frech's. The D.C. Circuit has "repeatedly recognized a plaintiff may request expungement of agency records for [ ] violations of the Privacy Act." *Abdelfattah v. Dep't of Homeland Sec.*, 787 F.3d 524, 534 (D.C. Cir. 2015); *see also Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007) ("the Privacy Act compels [an] agency to correct or remove [information] from [an] individual's record" that is "demonstrably false"); *White v. Off. of Pers. Mgmt.*, 787 F.2d 660, 662 (D.C. Cir. 1986) ("if a negative or damaging [personnel evaluation] were based on a demonstrably false premise, the agency would not be permitted to retain the evaluation").

District judges, too, recognize that the Privacy Act offers an adequate remedy when an APA claim seeks to amend, correct, or remove derogatory information. *See Poss v. Kern*, Civ. A. No. 23-2199 (DLF) 2024 WL 4286088, at *6 (D.D.C. Sept. 25, 2024) ("The relief [plaintiff] seeks through the APA—removal and deletion of the allegedly defamatory report from [a] database—is available under the Privacy Act." (citation omitted)); *Sanchez-Alanis v. Fed. Bureau of Prisons*, 270 F. Supp. 3d 215, 217 (D.D.C. 2017) ("the Privacy Act provide[s] adequate remedies" for claim seeking "expungement of a disciplinary report"); *Ivey v. Duncan*, Civ. A. No. 13-0576, 2014 WL 11256897, at *5 (D.D.C. Aug. 4, 2014), *R. & R. adopted*, 2016 WL 1452326 (D.D.C. Apr. 13, 2016) ("the Privacy Act provides an adequate remedy" when "an individual seeks amendment or correction of a record"); *Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C. 2012) (the Privacy Act provided adequate remedy when APA claim sought to remove "press release about [plaintiff's] charge" from agency website because it was "inaccurate"); *Christian v. Sec'y of Army*, Civ. A. No. 11-0276, 2011 WL 345945, at *1 (D.D.C. Jan. 31, 2011) (the Privacy Act "provides an adequate remedy" for plaintiff who "seeks to correct his military records"); *Echols v. Morpho Detection,*

*Inc.*, Civ. A. No. 12-1581 CW, 2013 WL 1501523, at *3 (N.D. Cal. Apr. 11, 2013) ("the Privacy

Act provides adequate remedies for Plaintiff to challenge the denial of his security clearance").

## V.     Frech is Not Entitled to Injunctive Relief

Even were Frech's debarment erroneous, Frech would not be entitled to injunctive relief.

Vacatur, not an injunction, is the appropriate remedy under the APA unless remand would serve

no purpose, such as if only one disposition is possible as a matter of law. That is not the case here.

On remand, the Debarring Official could reconsider the evidence and determine, based on a proper

view of the law and facts, whether debarment remains appropriate and, if so, the proper length of

any term of debarment. Regardless, Frech fails to establish any of the requirements for injunctive

relief. She fails to show that she will suffer irreparable injury without an injunction, that she lacks

an adequate remedy at law, or that the balance of equities or public interest warrant an injunction.

### A.     Vacatur is the Only Proper Remedy for an Erroneous Debarment

"Vacatur is the normal remedy when [a court is] faced with unsustainable agency action."

*N.J. Conservation Found. v. Fed. Energy Regul. Comm'n*, 111 F.4th 42, 63 (D.C. Cir. 2024)

(quotation marks omitted). "Under settled principles of administrative law, when a court reviewing

agency action determines that an agency made an error of law, the court's inquiry is at an end: the

case must be remanded to the agency." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C.

Cir. 1995). Simply put, "remand to the agency for further proceedings" is what a court "normally

does when it identifies an agency error." *Id.* A court thus "err[s] by directing [an agency] how to

[act] . . . rather than just remanding after identifying the error." *Allina Health Servs. v. Sebelius*,

746 F.3d 1102, 1111 (D.C. Cir. 2014). "Only in rare cases, when the reviewing court is convinced

that remand would serve no purpose, does the court direct the agency how to resolve a problem."

*Id.* at 1111 n.6. A remand would serve no purpose if only "one disposition is possible as a matter

of law." *Fisher v. Pension Benefit Guar. Corp.*, 994 F.3d 664, 669 (D.C. Cir. 2021).

Remand, not vacatur, is the only proper remedy for any error in Frech's debarment because this is not one of the "rare cases" in which "remand would serve no purpose." *Allina Health*, 746 F.3d at 1111 n.6. Even if the debarment is erroneous, this is not a case where only "one disposition is possible as a matter of law." *Fisher*, 994 F.3d at 669. "That is because debarment decisions are inherently ad hoc, fact-dependent exercises in which the individual [debarring officials] are given considerable discretion." *Legion Constr., Inc. v. Gibson*, 310 F.R.D. 1, 4 (D.D.C. 2015); *see also, e.g.*, *Sloan v. Dep't of Hous. & Urb. Dev.*, 231 F.3d 10, 14 (D.C. Cir. 2000) ("debarment" is a "discretionary" matter); *Burke*, 127 F. Supp. 2d at 238 ("Debarment is a discretionary measure"). The debarment regulations' text confirms this discretionary character: an agency "may" debar a person for proper cause, 2 C.F.R. §§ 180.800, 180.845(a), and "may" consider a variety of factors in making that decision, *id.* § 180.860. "As [the Supreme] Court has repeatedly observed, the word 'may' clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (cleaned up).

Upon remand, then, the Debarring Official could reconsider the evidence and decide, based on a proper view of the law and facts, whether debarment remains appropriate and if so, the length of any such debarment. *See Fed. Food Serv., Inc. v. Donovan*, 658 F.2d 830, 834 (D.C. Cir. 1981) ("The cause is remanded to the district court with directions to vacate the debarment. Leave may be granted to the Secretary, however, to reinstate appellants' names on the list of debarred bidders upon reopening the record and making satisfactory findings consistent with this opinion."). Given that the Debarring Official may be able to reimpose debarment based on a proper view of the law and facts, remand would serve a purpose, making vacatur, not an injunction, the proper remedy for any error in the debarment. *See Allina Health*, 746 F.3d at 1111 n.6; *Fisher*, 994 F.3d at 669.

## B.    Frech Fails to Satisfy Any of the Requirements for Injunctive Relief

A plaintiff who prevails on an APA claim must establish that she satisfies the traditional requirements for injunctive relief before the court can issue an injunction. Specifically, the plaintiff

"must demonstrate that (i) [she] has suffered an irreparable injury, (ii) remedies available at law are inadequate to compensate for that injury, (iii) the balance of hardships weighs in favor of an injunction, and (iv) the public interest would not be disserved by a permanent injunction." *Roane v. Barr*, 980 F.3d 123, 137 (D.C. Cir. 2020) (cleaned up). Although "the concepts of inadequate remedy and irreparable injury overlap in some senses," they are "conceptually distinct." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986). The irreparable injury inquiry looks to "the quality or severity of the harm necessary to trigger equitable intervention," whereas the inadequate remedy inquiry "looks to the possibilities of alternate modes of relief, however serious the initial injury." *Id.* As explained below, Frech satisfies none of these factors.

### 1.    Frech Fails to Demonstrate Irreparable Injury

"[T]he degree of proof required for irreparable harm is high." *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) (quotation marks omitted). Frech asserts two forms of irreparable injury, loss of employment and reputational harm, but neither constitutes irreparable harm under these facts. Further, her injuries are self-inflicted, and thus not irreparable.

*First*, Frech fails to show that any loss of employment is irreparable injury. Indeed, loss of employment generally is not irreparable injury. *See* Hr'g Tr. at 54:5-7 ("Cases are legion holding that loss of employment alone does not constitute irreparable harm."); *Fort Myer Constr. Corp. v. Shrensky*, Civ. A. No. 23-2275 (CJN), 2024 WL 181075, at *3 (D.D.C. Jan. 17, 2024) ("[Plaintiff] contends that his loss of employment is special. The Court is not convinced."); *Navy SEAL 1 v. Austin*, 600 F. Supp. 3d 1, 21 (D.D.C. 2022) ("loss of pay and benefits is not, as a matter of law, irreparable harm"); *Acosta v. District of Columbia*, Civ. A. No. 20-1189 (RC), 2020 WL 2934820, at *4 (D.D.C. June 3, 2020) ("The normal difficulties faced by loss of employment simply do not constitute irreparable harm, however substantial they may be," even in "an extremely sympathetic case"); *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 417 (D.D.C. 2018) ("loss of employment is

not legally irreparable"); *Colley v. James*, 254 F. Supp. 3d 45, 69 (D.D.C. 2017) ("the loss of employment income does not necessarily establish irreparable harm—even when the loss is unrecoverable"); *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 547 (D.D.C. 2016) ("cases are legion holding that loss of employment does not constitute irreparable injury"). That is because "an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). That is not to downplay the hardship of losing a job opportunity—only to say that it is not irreparable harm. *Id.*

While "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found," Frech offers no reason to think hers is one of the "extraordinary cases" for which an injunction "should be reserved," not a "routine case." *Sampson*, 415 U.S. at 92 n.68. She does not argue, much less show, that she cannot find a job at all, and "has not shown she is being excluded from her current field, whatever that field is now." Hr'g Tr. at 54:11-13. "She is simply precluded from engaging in federally funded . . . covered transactions." *Id.* at 54:13-14. "On her own account," however, she "does not have any intent or interest in becoming involved in such covered transactions in the future." *Id.* at 54:14-17; *see also* AR 4856 (declaration attesting that "I assure you that I have no ambition to return to research."). Taking this representation at face value, Frech's exclusion from covered transactions does not itself cause her irreparable injury.

Indeed, this Court already has rejected "[t]he crux of Frech's grievance." Hr'g Tr. at 54:18. In essence, Frech argues "that without [injunctive] relief she will not be able to continue working at her prior job as an administrator at a community hospital in Iowa City and would have difficulty

- 40 -

finding a similar position elsewhere because all hospitals in that city are owned by the university."
*Id.* at 54:18-23. But that, as this Court explained, is "not enough to carry the day. Because she has obtained an MBA and now works in contract administration, it is not evident . . . why she would not find another business or contract administration position outside of the hospital context." *Id.* at 54:24-55:3; *see also* AR 4824 ("Frech . . . obtained her MBA"); *Campbell*, 2020 WL 6445874, at *13 ("a person losing employment income must make a reasonably diligent search for suitable alternative employment to mitigate the loss . . . . the record raises substantial doubts about the diligence of [plaintiff's] search for a suitable new job" (cleaned up)); *Gentry v. E. W. P'ship Mgmt. Co. Inc.*, 816 F.3d 228, 241 (4th Cir. 2016) (year-long job search was inadequate). "Indeed, nothing in the record indicates that her skill set would not be transferable outside of that setting." Hr'g Tr. at 55:4-5. "And if she is committed to working at a hospital, she has not demonstrated why she could not expand her job search beyond the Iowa City metropolitan area." *Id.* at 55:5-8. Frech is "quite differently situated from, say, a practicing doctor who loses her medical license and cannot practice her chosen profession anywhere." *Id.* at 55:8-11. "Frech has failed to show her injury is sufficiently severe" because "she did not adequately explain why she cannot land another business administration job outside of the hospital setting or beyond the Iowa City limits." *Id.* at 56:12-16. Frech thus fails to show "the financial strain on her will truly be certain and great, and it was her burden to clear up any uncertainty by making a clear showing on this score." *Id.* at 56:16-19.

Defendants have nothing to add to this analysis, and Frech offers nothing to rebut it. Having presented the same arguments that she made in her unsuccessful motion for emergency relief, she is not entitled to a different result now. Indeed, the only difference between then and now is that then, she adduced evidence that her old job remained unfilled and available, *see* Email (Jan. 31, 2024), ECF No. 26-3; Ltr. (Feb. 20, 2024), ECF No. 26-4, whereas now, she offers no reason to

think the job is still available over a year later, *see* Frech Decl. ¶¶ 6-7, ECF No. 39-3 (suggesting that Iowa has not offered to hire her back should her debarment be lifted since February 20, 2024).

*Second*, Frech fails to show that any reputational harm constitutes irreparable injury either. A plaintiff who seeks "injunctive relief must establish an ongoing or future injury that is certainly impending and may not rest on past injury." *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857 (D.C. Cir. 2021) (quotation marks omitted). "The injury in question must be one that the court could remedy by issuing [an] injunction." *Campbell*, 2020 WL 6445874, at *12. But "this Court cannot conclude that" an "injunction would make a difference," *id.*, to Frech's reputation, because any reputational harm already has occurred, and she fails to show that an injunction would remedy it. The Office published its misconduct findings against Frech in the Federal Register in September 2023, *see* 88 Fed. Reg. at 60,694, and the findings also are "in the public records of the courts," *ACLU v. Dep't of Just.*, 655 F.3d 1, 7 (D.C. Cir. 2011), by virtue of this suit. Even if this Court vacates the debarment and findings, "no order of this Court can avert the risk that people in [Frech's] field may discover that *Federal Register* entry" or the docket in this case "and view [her] as someone who is unworthy of employment." *Brodie*, 715 F. Supp. 2d at 85 (quotation marks omitted); *see also* Hr'g Tr. at 57:4 ("In that sense, the case is somewhat analogous to *Brodie*").

Frech's reputation argument also fails for a second reason: "this Court [has] rejected the claim that debarment alone, absent more specific evidence, is enough to show irreparable injury." Hr'g Tr. at 56:23-25. "Otherwise, all debarred contractors would be able to show irreparable injury simply by being debarred." *Campbell*, 2020 WL 6445874, at *12 (cleaned up). Frech's reputation argument notably rests entirely on and thus is derivative of loss of employment: the harm she fears is that potential employers will discover her debarment and misconduct findings and not hire her. *See* Pl.'s Mem. at 42-43. Letting her frame this injury as reputational harm would bypass the limits

on loss of employment as irreparable injury. Frech "may not create irreparable harm through artful pleading" in this way. *Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 8 n.4 (1st Cir. 2021).

Last, any harm is self-inflicted, and thus, not irreparable. *See Steele v. Dep't of Def.*, Civ. A. No. 22-3604 (CJN), 2022 WL 22329872, at *1 (D.D.C. Dec. 8, 2022) ("self-inflicted injuries do not constitute irreparable harm"); *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 35 (D.D.C. 2014) ("the harm is self-inflicted and, therefore, not the irreparable harm that supports injunctive relief"); *Second City Music, Inc. v. City of Chi.*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-inflicted wounds are not irreparable injury"); *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable").

Any asserted harm is self-inflicted because Frech failed to exhaust administrative remedies before, or pursue preliminary relief after, her debarment became final. Frech did not seek an ALJ hearing before her debarment became final—had she done so, the proposed debarment would not have become final while proceedings were pending. 42 C.F.R. § 93.406. Nor did Frech lack notice that she could have requested an ALJ hearing—beyond the notice that the regulations themselves provide, the Office expressly notified Frech of her opportunity to contest the findings and proposed administrative actions before an ALJ. AR 4785-86. After the debarment became final, Frech did not seek reconsideration of the debarment. 2 C.F.R. § 180.875. Nor did Frech pursue emergency relief once the debarment became final. Although Frech made an initial abortive attempt to seek emergency relief under seal in August 2023, ECF No. 9, this Court denied her leave to file under seal, ECF No. 5, and she did not renew these efforts on the public docket for six months, ECF No. 20. Her failure to exhaust administrative remedies or pursue emergency relief after her debarment became final renders any harm self-inflicted, and thus, not irreparable. *See* Hr'g Tr. at 58:1-3, 59:2-8 ("to the extent Frech will suffer irreparable harm absent emergency relief, this is a crisis partially

- 43 -

of her own making" as her "failure to avail herself of the service's regulatory scheme for correcting any purported mistakes before a debarment takes effect was a major contributing factor to her current predicament. That fact diminishes her assertions of irreparable harm").

### 2.    Frech Fails to Demonstrate an Inadequate Remedy at Law

Frech likewise fails to demonstrate an inadequate remedy at law because the Privacy Act provides her an adequate remedy. *See supra* § IV; *Ass'n of Flight Attendants v. Chao*, 493 F.3d 155, 160 (D.C. Cir. 2007) (availability of "administrative remedies" provided "adequate remedy"); *Fuentes v. Azar*, 468 F. Supp. 3d 83, 92 (D.D.C. 2020) ("Plaintiff has not shown why . . . review under" other statutory schemes provided "inadequate remedies").

### 3.    Frech Fails to Demonstrate that the Equities or Public Interest Favor Her

"The balance of the equities and the public interest merge when, as here, the Government is the opposing party." *Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022) (cleaned up). Initially, because Frech fails to satisfy the other requirements for injunctive relief, the equities and public interest alone cannot merit an injunction. *See Shaw v. Austin*, 539 F. Supp. 3d 169, 184 (D.D.C. 2021) ("Because . . . Plaintiff has failed to show either a likelihood of success on the merits or irreparable harm, the Court need not consider the balance of equities or the public interest"); *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 116 (D.D.C. 2016) ("if [a plaintiff] is unable to demonstrate a likelihood of success on the merits, the equities alone cannot justify an injunction"); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 230 (D.D.C. 2012) ("Without a showing of likely success on the merits or irreparable harm, [a plaintiff] cannot obtain preliminary injunctive relief").

Regardless, "these factors weigh strongly against [any injunctive] relief." Hr'g Tr. at 59:13-14. "The government—and, by extension, the public—has a compelling interest in enforcing the debarments of contractors who have properly been found presently irresponsible." *Campbell*, 2020 WL 6445874, at *14. Even if Frech "has no plans" to engage in covered transactions, that "does

not mean that the government has no reason to debar her." *Id.* Institutions that accept federal funds "occupy a position of public trust, given their ability to bill the government for services." *Id.* "Debarring irresponsible individuals may help protect the public against waste, fraud, and abuse by preventing those individuals" from misusing federal funds. *Id.* After all, "[d]ebarment reduces the risk of harm to the system by eliminating the source of the risk, that is, the unethical" person. *Caiola v. Carroll*, 851 F.2d 395, 399 (D.C. Cir. 2988). Frech's countervailing interests are modest, comparatively, for the reasons that she fails to demonstrate irreparable injury. *See supra* § V.B.1.

## CONCLUSION

For these reasons, this Court should grant Defendants summary judgment and deny Frech's motion for summary judgment.

Dated: May 2, 2025                    Respectfully submitted,

EDWARD R. MARTIN, Jr., D.C. Bar #481866
United States Attorney

By: _____*/s/ Bradley G. Silverman*_____
BRADLEY G. SILVERMAN
D.C. Bar #1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IVANA FRECH,

        Plaintiff,

    v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

        Defendants.

Civil Action No. 23-2530 (CRC)

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for summary judgment, Defendants' cross-motion for summary judgment, the various memoranda submitted in support thereof and opposition thereto, and the entire record herein, it is hereby

ORDERED that Defendants' cross-motion for summary judgment is GRANTED, and it is further

ORDERED that Plaintiff's motion for summary judgment is DENIED; and it is further

ORDERED that judgment is ENTERED for Defendants.

SO ORDERED.

_____
Date

_____
CHRISTOPHER R. COOPER
United States District Judge