UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IVANA FRECH,

          Plaintiff,

   v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, et al.,

          Defendants.

Civil Action No. 23-2530 (CRC)

**DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

ARGUMENT ........................................................................................................1

I. The Debarring Official's Determination That Frech Failed to Demonstrate Present Responsibility Was Not Arbitrary or Capricious .............................................1

    A. Frech Refuses to Accept Responsibility for the Seriousness of Her Misconduct ...2

    B. The Debarring Official Reasonably Determined that Frech's Post-Misconduct Activities Do Not Suffice to Demonstrate Present Responsibility ........................6

    C. The Debarring Official Adequately Addressed the Time that Has Elapsed Since Frech's Misconduct .............................................................................9

    D. Frech's Assertion That She Has Reasonable Grounds to Disagree With the Debarring Official's Assessment of Her Culpability is Irrelevant .......................12

II. Defendants' Failure to Investigate Ward Does Not Preclude Debarring Frech...............12

III. The Debarring Official's Determination that Frech's Misconduct Was Sufficiently "Serious and Compelling" to Warrant Debarment is Not Arbitrary or Capricious ..........15

IV. The Privacy Act Precludes APA Relief Because It Provides an Adequate Remedy ........15

    A. The Argument that the Privacy Act Bars Relief Properly is Before this Court ....15

    B. The Privacy Act Precludes Frech's Claims .........................................................19

V. Frech is Not Entitled to Injunctive Relief.....................................................................21

    A. Vacatur is the Only Proper Remedy for an Erroneous Debarment.......................21

    B. Frech Fails to Satisfy Any of the Requirements for Injunctive Relief .................23

        1. Frech Fails to Establish Irreparable Injury or an Inadequate Remedy at Law ...........................................................................................23

        2. Frech Fails to Demonstrate that the Equities or Public Interest Favor Her ...........................................................................................24

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ............................................................................................21

*Allina Health Servs. v. Sebelius*,
  746 F.3d 1102 (D.C. Cir. 2014) ....................................................................................21, 22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................17

*Beberman v. Blinken*,
  Civ. A. No. 23-0036, 2023 WL 5836059 (D.V.I. Sept. 8, 2023) ............................................24

*Bismullah v. Gates*,
  551 F.3d 1068 (D.C. Cir. 2009) ..........................................................................................21

*Blum v. Morgan Guar. Tr. Co. of N.Y.*,
  709 F.2d 1463 (11th Cir. 1983) ..........................................................................................16

*Bollea v. Gawker Media, LLC*,
  Civ. A. No. 12-2348, 2012 WL 5509624 (M.D. Fla. Nov. 14, 2012)......................................23

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024)..................................................................................................................4

*Brodie v. Dep't of Health & Hum. Servs.*,
  715 F. Supp. 2d 74 (D.D.C. 2010) ......................................................................................23

*Brown v. INS*,
  775 F.2d 383 (D.C. Cir. 1985)..............................................................................................7

*Burke v. EPA*,
  127 F. Supp. 2d 235 (D.D.C. 2001) .................................................................................4, 20

*Campbell v. Schmidt*,
  Civ. A. No. 20-1785 (CRC), 2020 WL 6445874 (D.D.C. Nov. 3, 2020) ...................11, 20, 25

*Carlson v. Postal Regul. Comm'n*,
  938 F.3d 337 (D.C. Cir. 2019)............................................................................................10

*Chavarriaga v. N.J. Dep't of Corrs.*,
  806 F.3d 210 (3d Cir. 2015) ...............................................................................................16

**Cases (cont.)**

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) ................................................................................................21

*Cullen v. Dep't of Homeland Sec.*,
  Civ. A. No. 20-0113 (TJK), 2023 WL 5607425 (D.D.C. Aug. 30, 2023) ...............................13

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ................................................................................................20

*Douglass v. First Nat. Realty Corp.*,
  437 F.2d 666 (D.C. Cir. 1970) ...................................................................................15

*El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health & Hum. Servs.*,
  396 F.3d 1265 (D.C. Cir. 2005) .................................................................................19

*ExxonMobil Oil Corp. v. FERC*,
  No. 06-1273, 2007 WL 2306949 (D.C. Cir. July 27, 2007).....................................................13

*Fed. Food Serv., Inc. v. Donovan*,
  658 F.2d 830 (D.C. Cir. 1981) ...................................................................................22

*Fisher v. Pension Benefit Guar. Corp.*,
  994 F.3d 664 (D.C. Cir. 2021) ...................................................................................21

*Fla. Coastal Sch. of L., Inc. v. Am. Bar Ass'n*,
  Civ. A. No. 18-0621, 2018 WL 9392564 (M.D. Fla. July 9, 2018)........................................23

*Flete-Garcia v. Marshals Serv.*,
  Civ. A. No. 18-2442 (RDM), 2021 WL 1148796 (D.D.C. Mar. 24, 2021) ............................17

*Flyers Rts. Educ. Fund, Inc. v. Dep't of Transp.*,
  957 F.3d 1359 (D.C. Cir. 2020)..................................................................................10

*Friedler v. GSA*,
  271 F. Supp. 3d 40 (D.D.C. 2017) .......................................................................20, 24

*Gabriel v. Corr. Corp. of Am.*,
  211 F. Supp. 2d 132 (D.D.C. 2002) .............................................................................16

*Garcia v. City of Laredo*,
  Civ. A. No. 14-0140, 2014 WL 11531843 (S.D. Tex. Sept. 12, 2014)....................................23

*Haneke v. Sec'y of Health, Ed. & Welfare*,
  535 F.2d 1291 (D.C. Cir. 1976) .................................................................................15

**Cases (cont.)**

*Henok v. Chase Home Fin., LLC,*
    922 F. Supp. 2d 110 (D.D.C. 2013) ......................................................................16

*In re Watson,*
    910 F. Supp. 2d 142 (D.D.C. 2012) ......................................................................13

*Johnson v. D.C. Metro. Police Dep't,*
    Civ. A. No. 97-0094 (PLF), 1999 WL 1105286 (D.D.C. Nov. 30, 1999) ..............16

*Jones v. Dep't of Just.,*
    111 F. Supp. 3d 25 (D.D.C. 2015) ........................................................................17

*Kisser v. Cisneros,*
    14 F.3d 615 (D.C. Cir. 1994) ..........................................................................13, 14

*Kreis v. Sec'y of Air Force,*
    406 F.3d 684 (D.C. Cir. 2005) ..............................................................................15

*Langley v. Napolitano,*
    677 F. Supp. 2d 261 (D.D.C. 2010) ......................................................................19

*Legion Constr., Inc. v. Gibson,*
    310 F.R.D. 1 (D.D.C. 2015) ...............................................................................4, 22

*Liff v. Off. of Inspector Gen.,*
    881 F.3d 912 (D.C. Cir. 2018) ..............................................................................20

*Lockhart v. Coastal Int'l Sec., Inc.,*
    905 F. Supp. 2d 105 (D.D.C. 2012) ......................................................................19

*M Nicolas Enters., LLC v. United States,*
    No. 20-691C, 2022 WL 558043 (Fed. Cl. Feb. 23, 2022) ....................................20

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ..........................................................................................10, 24

*Murphy v. Dep't of Air Force,*
    326 F.R.D. 47 (D.D.C. 2018) ................................................................................18

*My Fav Elecs., Inc. v. Currie,*
    Civ. A. No. 24-1959, 2024 WL 4528330 (N.D. Ill. Oct. 18, 2024) .......................24

*N.J. Conservation Found. v. FERC,*
    111 F.4th 42 (D.C. Cir. 2024) ...............................................................................21

**Cases (cont.)**

*Nat'l R.R. Passenger Corp. v. ERC Frankona Ruckversicherungs-AG.*,
  Civ. A. No. 03-2420, 2005 WL 4708212 (D.D.C. June 24, 2005) .........................................16

*Nippon Shinyaku Co. v. Iancu*,
  369 F. Supp. 3d 226 (D.D.C. 2019) ......................................................................13

*Oceana, Inc. v. Pritzker*,
  24 F. Supp. 3d 49 (D.D.C. 2014) .........................................................................13

*Roelofs v. Sec'y of Air Force*,
  628 F.2d 594 (D.C. Cir. 1980) ...........................................................................10

*Saunders v. Davis*,
  Civ. A. No. 15-2026 (RC), 2016 WL 4921418 (D.D.C. Sept. 15, 2016) ................................13

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) .....................................................................................22

*Sloan v. Dep't of Hous. & Urb. Dev.*,
  231 F.3d 10 (D.C. Cir. 2000) .........................................................................4, 12

*Sprint Commc'ns Co., L.P. v. FCC*,
  76 F.3d 1221 (D.C. Cir. 1996) ..........................................................................13

*Steele v. Schafer*,
  535 F.3d 689 (D.C. Cir. 2008) ..........................................................................17

*Thomas v. Fed. Aviation Admin.*,
  Civ. A. No. 05-2391 (CKK), 2007 WL 219988 (D.D.C. Jan. 25, 2007) ...............................20

*United States v. Sci. Applications Int'l Corp.*,
  555 F. Supp. 2d 40 (D.D.C. 2008) .......................................................................17

*Usherson v. Bandshell Artist Mgmt.*,
  Civ. A. No. 19-6368, 2020 WL 4228754 (S.D.N.Y. July 22, 2020) .......................................23

*Vaughan v. Cap. City Protective Servs. II*,
  Civ. A. No. 20-2932 (RC), 2025 WL 275705 (D.D.C. Jan. 23, 2025) ...................................18

*Voth v. Holder*,
  373 F. App'x 78 (D.C. Cir. 2010) .......................................................................13

*Webster v. Fall*,
  266 U.S. 507 (1925) .....................................................................................21

**Cases (cont.)**

*Whalen v. Carter*,
  954 F.2d 1087 (5th Cir. 1992) ...............................................................................16

**Statutes**

5 U.S.C. § 552a(d)(2)(B).......................................................................................19

5 U.S.C. § 704........................................................................................... 19, 20

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................................17

Fed. R. Civ. P. 12(b)(6)........................................................................................18

Fed. R. Civ. P. 12(c)............................................................................................18

Fed. R. Civ. P. 12(h)(2)(B)...................................................................................18

Fed. R. Civ. P. 56(a)............................................................................................16

**Regulations**

2 C.F.R. § 180.855(b)......................................................................................7, 8

2 C.F.R. § 180.860 ................................................................................... 4, 11, 12

2 C.F.R. § 180.860(g).............................................................................. 1, 2, 3

42 C.F.R. § 93.403 ...............................................................................................12

**Other Authorities**

Wright & Miller, *Federal Practice & Procedure* (4th ed. updated May 2025)..................... 17-18

Defendants Department of Health and Human Services (the "Department"); Secretary of Health and Human Services Robert F. Kennedy, Jr.; Office of Research Integrity (the "Office"); Sheila Garrity, Director of the Office; and Jennifer D. Johnson, Acting Deputy Assistant Secretary for Acquisitions (the "Debarring Official"), by and through the undersigned counsel, respectfully reply in support of their cross-motion for summary judgment, ECF No. 41.

## ARGUMENT

In her opposition to Defendants' cross-motion for summary judgment, Plaintiff Ivana Frech abandons her challenge to the Debarring Official's finding that she was solely responsible for the charged misconduct. Defendants have explained that her remaining arguments lack merit, and her opposition fails to show otherwise. This Court thus should grant Defendants summary judgment.

## I.    The Debarring Official's Determination That Frech Failed to Demonstrate Present Responsibility Was Not Arbitrary or Capricious

It was not arbitrary or capricious for the Debarring Official to determine that Frech failed to demonstrate present responsibility given her refusal to accept responsibility for the seriousness of her misconduct. Frech's ongoing denial that her misconduct was knowing and intentional means that she has not "accepted responsibility for the wrongdoing and recognize[d] the seriousness of the misconduct that led to the cause for debarment." 2 C.F.R. § 180.860(g). Given Frech's ongoing refusal to acknowledge the seriousness of her misconduct, the Debarring Official did not act in an arbitrary or capricious manner in determining that Frech's various post-misconduct activities were insufficient to demonstrate present responsibility. The Debarring Official adequately addressed the time that has elapsed since Frech's misconduct, but explained that debarment remained appropriate because Frech, still to this day, refuses to accept responsibility for having acted in a knowing and intentional manner. Last, Frech's insistence that she has reasonable grounds to deny that she acted

knowingly or intentionally is irrelevant. All that matters is that it was not arbitrary or capricious for the Debarring Official to determine that Frech's misconduct was knowing and intentional.

A.      **Frech Refuses to Accept Responsibility for the Seriousness of Her Misconduct**

Under the debarment regulations, Frech's ongoing denial that her misconduct was knowing and intentional supports the Debarring Official's determination that she failed to satisfy her burden to show that she is presently responsible. The "aggravating factors that the debarring official may consider in determining whether to debar [Frech] and the length of [her] debarment period" include "[w]hether [she has] accepted responsibility for the wrongdoing and recognize[d] the seriousness of the misconduct that led to the cause for debarment." 2 C.F.R. § 180.860(g). Frech has not "accepted responsibility," *id.*, for the misconduct that the Debarring Official found: knowing and intentional research misconduct. And she does not "recognize the seriousness of the misconduct," *id.*, as she insists that it was reckless rather than knowing and intentional. Given that Frech neither accepted responsibility for nor recognized the seriousness of her misconduct, it was not arbitrary or capricious for the Debarring Official to find that Frech failed to establish present responsibility.

The Debarring Official's determination that Frech's denial that she acted knowingly and intentionally evinces a lack of present responsibility flows directly from the Debarring Official's finding that Frech acted knowingly and intentionally. The Debarring Official found that Frech's misconduct was knowing and intentional based on three facts: (1) Frech's manipulation of images were not one-off occurrences, but part of a broad pattern across six figures in three papers, (2) the manipulated results always supported her scientific hypotheses, and (3) the manipulation involved affirmative acts such as duplicating, flipping, and splicing, which one cannot easily ascribe to mere recklessness. AR 4927 ¶¶ 57-58, 4930 ¶¶ 75-78, 81, 4931 ¶¶ 82-83, 4932 ¶¶ 96-98, 4934-35 ¶¶ 117-19, 4936 ¶¶ 137-39, 4938 ¶¶ 155-56, 4939 ¶¶ 157-59, 4941 ¶ 178, 4942 ¶ 185. Frech does not dispute these findings, or that they support a finding that she acted knowingly and intentionally.

Once the Debarring Official found that Frech's misconduct was knowing and intentional, the Debarring Official reasonably determined that Frech knows that her misconduct was knowing and intentional. That, in turn, makes it not arbitrary or capricious for the Debarring Official to find that Frech's denial that her misconduct was knowing and intentional means she has not "accepted responsibility for the wrongdoing and recognize[d] the seriousness of the misconduct that led to the cause for debarment," thus making Frech not "presently responsible." 2 C.F.R. § 180.860(g). After all, if Frech acted knowingly and intentionally, then she presumably knows it (unless she has amnesia). The Debarring Official was not obliged to give Frech credit for accepting responsibility for, and recognizing the seriousness of, her misconduct when Frech still denies, to this day, that her misconduct was knowing and intentional. Indeed, Frech had an opportunity on remand in this case to acknowledge that her misconduct was knowing and intentional, but she refused to do so.

None of Frech's counterarguments have merit. Frech argues that she "has admitted and apologized for years as to mistakes she made in the reckless disregard of established laboratory and research practices," but she still denies that her misconduct was—as the Debarring Official reasonably found—knowing and intentional. Pl.'s Resp. at 2, ECF No. 24. Given that denial, it was not arbitrary or capricious for the Debarring Official to find that Frech has not "accepted responsibility for the wrongdoing and recognize[d] the seriousness of the misconduct that led to the cause for debarment." 2 C.F.R. § 180.860(g). Indeed, to insist that one's misconduct is merely reckless is the opposite of taking responsibility for acting knowingly and intentionally. She stresses that this is not a criminal case, which is true, but irrelevant to the question presented. Simply put, it was not arbitrary or capricious for the Debarring Official to determine that Frech's insistence that her misconduct was only reckless meant she did not accept responsibility for her misconduct.

Perhaps realizing that she cannot fairly be said to have accepted responsibility, Frech pivots to insisting that "acceptance of responsibility is but one of several non-exhaustive factors to be considered by a debarring official as to whether debarment is appropriate." Pl.'s Resp. at 3. But the Debarring Official had broad discretion in how to weigh those factors. *See Sloan v. Dep't of Hous. & Urb. Dev.*, 231 F.3d 10, 14 (D.C. Cir. 2000) ("debarment and suspension are discretionary measures"); *Legion Constr., Inc. v. Gibson*, 310 F.R.D. 1, 4 (D.D.C. 2015) ("debarment decisions are inherently ad hoc, fact-dependent exercises in which the individual [debarring officials] are given considerable discretion"); *Burke v. EPA*, 127 F. Supp. 2d 235, 238, 242 (D.D.C. 2001) ("Debarment is a discretionary measure," and agency "has discretion to impose debarment periods consistent with the case circumstances and mitigating factors"); Defs.' Mem. at 38, ECF No. 41-1 (debarment is discretionary). The debarment regulations, after all, state only that an agency "may consider" the enumerated aggravating and mitigating factors, 2 C.F.R. § 180.860, and "the word 'may' clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (cleaned up). It was not arbitrary or capricious for the Debarring Official to determine that Frech's ongoing refusal to accept responsibility for acting knowingly and intentionally merited her three-year debarment.

Frech insists that there is "room for reasonable disagreement as to [her] culpability," Pl.'s Resp. at 4, but the relevant question is only whether it was arbitrary or capricious for the Debarring Official to find that Frech refused to take responsibility for, or acknowledge the seriousness of, her misconduct. As explained, once the Debarring Official found Frech's misconduct to be knowing or intentional (and there is no dispute that *that* finding was not arbitrary or capricious), it naturally followed that Frech knows that she acted knowingly and intentionally, making her denial of that fact a refusal to accept responsibility for or acknowledge the seriousness of her misconduct. To the extent that any "reasonably disagreement," *id.*, exists between the parties' respective positions,

the Administrative Procedure Act ("APA") makes clear who wins if the parties offer competing reasonable interpretations of the record: the agency. *See* Defs.' Mem. at 24 ("the APA presupposes that sometimes more than one finding can be reasonable, and requires deference to an agency's reasonable finding even if a different finding also would have been reasonable" (citing cases)).[1]

Frech's argument that her admission of reckless misconduct suffices to demonstrate present responsibility because research misconduct can be reckless, not just knowing or intentional, *see* Pl.'s Resp. at 4, once again tries to substitute her own judgment for the Debarring Official's. The Debarring Official found that her misconduct was knowing and intentional, not just reckless. As such, the mere fact that it is possible to commit research misconduct recklessly does not mean that Frech accepted responsibility for and acknowledged the seriousness of the misconduct that the Debarring Official found—knowing and intentional misconduct—by admitting to recklessness.

Finally, Frech's insistence that she genuinely believes her misconduct was merely reckless fails. Once the Debarring Official found that Frech's misconduct was knowing and intentional, the Debarring Official was entitled to draw a rational inference that Frech knows that her misconduct was knowing and intentional—i.e., that Frech does not truly believe that she acted only recklessly. Indeed, to accept Frech's argument would mean that the Debarring Official is obliged to defer to Frech's self-serving assertion that she truly thinks that she acted merely recklessly, even in the face of all the countervailing evidence supporting the Debarring Official's finding that Frech acted knowingly and intentionally. Nothing in the APA or governing regulations require such credulity.

---

[1]    Contrary to Frech's insinuation, Defendants never said or suggested that Frech actually has a reasonable basis for denying that she acted knowingly and intentionally—only that it would not matter, under the APA, even if she did. *See* Defs.' Mem. at 24. To the extent Frech suggests that Defendants somehow conceded that she has a reasonable basis to deny that her misconduct was knowing and intentional, she misunderstood Defendants' argument and thus mischaracterize it.

**B.    The Debarring Official Reasonably Determined that Frech's Post-Misconduct Activities Do Not Suffice to Demonstrate Present Responsibility**

The Debarring Official reasonably determined that for purposes of present responsibility, Frech's various post-misconduct activities do not overcome her ongoing denial that she had acted knowingly and intentionally. The Debarring Official did not—as Frech inaccurately asserts—"disregard" Frech's post-misconduct activities or deem them "irrelevant." Pl.'s Resp. at 7. Rather, the Debarring Official concluded that these activities simply do not establish present responsibility given that Frech still denies that she acted knowingly and intentionally. That was reasonable: it is not arbitrary or capricious to fear that someone who has engaged in wrongdoing in the past and still refuses to admit it, even after she is caught, will engage in similar wrongdoing in the future.

Nor was it arbitrary or capricious for the Debarring Official to find that Frech had "not been transparent about her involvement with federally funded research while working in the Zhan laboratory." AR 4945 ¶ 205. As explained earlier, Frech asserted that she "neither sought, received, nor participated in research supported by [Public Health Service ("Service")] funding since . . . 2013. In fact, [Frech] was listed as an author on several research papers from the Zhan Laboratory published in 2017-2021 that cite [National Institutes of Health] funding as supporting the published research, and her reported author contributions included performing, designing, and supervising experiments and analyzing data. And [she] was listed as research scientist or Senior/Key Personnel on three grant applications submitted to [National Institutes of Health] in 2016-2018." *Id.*

Frech insists that she in fact "explained the details behind every instance in which her name appeared in research papers originating from Dr. Zhan's lab and why her participation did not involve [Service] funding," Pl.'s Mem. at 29, but she adduced no evidence at all to support these "explanations." She offered only "assertions of counsel," which are "not evidence," so Defendants

did not need to credit them. *Brown v. INS*, 775 F.2d 383, 388 (D.C. Cir. 1985). The Debarring Official especially did not need to credit Frech's bare assertions given her history of dishonesty.

Perhaps more importantly, even taking Frech's explanations at face value, they still do not show that she steered clear of Service funds at Dr. Zhan's lab. "[E]ven crediting [her] assertions, Frech admits that she worked on three papers supported by a federal grant (1) that was re-awarded only one year before she joined the lab, (2) for which she believed the lab already had reapplied by the time she joined it, and (3) that she is not certain had ended by the time she joined the lab." Defs.' Mem. at 17. And Frech "'does not deny that she used equipment and materials that the laboratory had procured using [Service] funds back when those grants were active,' which the Debarring Official reasonably considered to involve the use of federal funds." *Id.* (quoting AR 4946 ¶ 208). Tellingly, Frech offered no response whatsoever to these points in her opposition.

Rather than address these points, Frech accuses the Debarring Official of "painstakingly attempt[ing] to discredit these explanations." Pl.'s Resp. at 8. It is entirely proper for the Debarring Official to be skeptical of and interrogate her assertions, especially in light of her failure to adduce evidence to support these assertions and her documented history of dishonesty. *See* Defs.' Mem. at 15-16 (citing cases holding that an agency need not accept uncritically any claim a party makes). Frech bore the burden to prove present responsibility. *See* 2 C.F.R. § 180.855(b). She did not meet her burden by offering evidence-free assertions, especially given that her explanations fail even on their own terms to show that she steered clear of Service-funded research while at Dr. Zhan's lab. Frech's accusation that the Debarring Official relied on "conjecture," Pl.'s Resp. at 8, is especially ironic given that she adduces no evidence to support her claims despite bearing the burden of proof.

Frech repeats her argument that "if she indeed had been working with federal funds at Dr. Zhan's lab for years without issue, that fact weighs in favor of her present responsibility, not

against it," Pl.'s Resp. at 8, but Defendants already explained why that argument fails. *See* Defs.' Mem. at 18. *First*, Frech claims she did not work with Service funds at all at Dr. Zhan's lab, so if she really did, that means that she still to this day is being untruthful what she did at the lab, which plainly undercuts a contention that she is presently responsible. Frech argues that "Defendants fail to even entertain the possibility that Dr. Frech's assertion is based on a good-faith belief that her statements about those facts . . . were true." Pl.'s Resp. at 9. But Frech is not entitled to the benefit of the doubt given the Debarring Official's finding that she knowingly and intentionally committed research misconduct. Frech asserted that she did not knowingly work with Service funds at Dr. Zhan's lab. AR 4808. If Frech did in fact knowingly work with Service at the lab, then it certainly would be reasonable to find that her false statement to the contrary undercuts her credibility.

*Second*, there is no evidence that Frech did not engage in misconduct at the lab. Even if Frech was never accused of or found to have engaged in misconduct at the lab, that is not proof that she did not engage in misconduct at the lab—it is possible that she just never got caught. As such, it was not arbitrary or capricious for the Debarring Official to determine that the mere fact that Frech was not accused of or found to have engaged in misconduct at the lab had little probative value. Frech accuses Defendants of "expecting [her] to prove a negative," Pl.'s Resp. at 9, but she is the one asserting that she refrained from misconduct at the lab—it is her burden to prove it. *See* 2 C.F.R. § 180.855(b). If Frech cannot do so, then she is not entitled to have the Debarring Official give her credit for refraining from misconduct at the lab. Her argument that this "is tantamount to a finding of misconduct," Pl.'s Resp. at 9, meanwhile, is frivolous. The Debarring Official did not find that Frech committed misconduct at Dr. Zhan's lab. She merely explained that Frech failed to satisfy her burden to prove her own assertion that she refrained from any such misconduct. That is

different. Simply put, Frech cannot demand credit for refraining from misconduct at Dr. Zhan's lab without proving it, and her arguments to the contrary do not undercut this commonsense point.

### C.    The Debarring Official Adequately Addressed the Time that Has Elapsed Since Frech's Misconduct

The Debarring Official considered the time that elapsed since Frech's research misconduct, and explained that debarment remains proper because Frech still refuses to accept responsibility for the seriousness of her misconduct. And although the *reason* for this gap in time is immaterial, Defendants still explained it—the large volume of the Office's work relative to its staffing levels.

In response, Frech just reiterates her argument that her denial that she acted knowingly and intentionally does not prevent her from establishing present responsibility, which fails for all the reasons explained. If Frech's misconduct was knowing and intentional, as the Debarring Official not-arbitrarily or -capriciously found, then it is not arbitrary or capricious to think that Frech knows it—i.e., that Frech does not truly believe that her misconduct was merely reckless. Frech argues that by this logic, "30 years could have passed" and the Debarring Official would still view her as not presently responsible if she still denied that her misconduct was knowing and intentional. Pl.'s Resp. at 10. Perhaps so. So long as Frech still denies what she did and refused to acknowledge the seriousness of it, it will not be arbitrary or capricious to conclude that she fails to establish present responsibility. Indeed, Frech's misguided belief that the mere passage of time alone can render her presently responsible even if she never admits what she did is the fundamental flaw in her position.

Frech also appears to criticize Defendants' explanation of how the volume of the Office's responsibilities relative to its staffing levels resulted in delay, but as explained, the *reason* for the delay is wholly immaterial to whether her debarment is appropriate. The delay is relevant solely to the issue of Frech's present responsibility, i.e., whether the debarment remains appropriate today given the time that elapsed since Frech's misconduct occurred. *See* Defs.' Mem. at 21-22. Because

the Debarring Official reasonably found that debarment remains proper today given Frech's refusal to acknowledge the seriousness of her misconduct, the reason for the delay is entirely immaterial.

In any event, the precise nature of Frech's criticism of Defendants' explanation for the gap in time is unclear. Frech quotes Defendants' explanation at length, without specifying what exactly is wrong with it. *See* Pl.'s Resp. at 11. At most, she argues that Defendants did not provide "specific information as to [her] case," *id.*—i.e., information tying the general facts of the Office's workload and staffing levels to her case—but such specificity was unnecessary. Under the APA, an agency's "explanation need not be exhaustive. All that is required is 'a brief statement of the grounds for denial.'" *Flyers Rts. Educ. Fund, Inc. v. Dep't of Transp.*, 957 F.3d 1359, 1363 (D.C. Cir. 2020) (citing 5 U.S.C. § 555(e)); *see also Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019) ("An agency need not discuss every item of fact or opinion included in the submissions made to it," so long as its reasoning "suffic[es] to enable the courts to see what major issues [ ] were ventilated and why the agency reacted to them as it did" (cleaned up)); *Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 601 (D.C. Cir. 1980) (describing this requirement as "modest"). All that matters is that Defendants "offer[ed] a rational connection between the facts found," i.e., the reason for the gap in time, "and the choice made" to proceed with debarment. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (quotation marks omitted).

Frech argues that "Defendants' explanation for the gap in time merely relies on information that was before the Court at the time of its recommendation of a voluntary remand," Pl.'s Resp. at 12, but this misses the point. What gave the Court pause previously was not that Defendants failed to explain the reason for the gap in time, but rather, that Defendants had failed to consider whether the gap in time impacted Frech's present responsibility. *See* Hr'g Tr. at 49:13-15, 50:6-8, ECF No. 41-1 ("the office failed to mention that a decade had passed since the research misconduct when

fashioning its sanction . . . . the office may have had to explain why this factor did not ameliorate its concerns about Dr. Frech's present responsibility"). The new decision cures that shortcoming— it expressly addressed the time gap and explained that Frech's ongoing refusal to acknowledge the seriousness of her misconduct prevent her from establishing present responsibility despite the time gap. AR 4941 ¶¶ 179- 84, 4943 ¶ 197. Finally, to the extent that the reason for the delay is relevant (as opposed only to the delay's impact on Frech's present responsibility), the old decision did not explain the reason for the time gap. Rather, Defendants supplied this explanation through litigation filings that post-dated the decision itself. *See* Defs.' Opp'n at 35, ECF No. 23; Runko Decl., ECF No. 22-1. The new decision, in contrast, itself explains the reason for the delay. AR 4944 ¶ 199.

Last, Frech argues that "[a] debarring official acts in an arbitrary and capricious manner if the debarment decision fails to explain why he did not find the mitigating evidence presented . . . persuasive," *Campbell v. Schmidt*, Civ. A. No. 20-1785 (CRC), 2020 WL 6445874, at *9 (D.D.C. Nov. 3, 2020) (cleaned up), but this rule, although correct, has no application here. The Debarring Official did explain why she did not find Frech's mitigating evidence persuasive: because Frech still refused to accept responsibility for the seriousness of her misconduct. Frech argues that "the Debarring Official provides no explanation of how she weighed any factors she considered, let alone the weight she assigned to each factor, and her methodology cannot be discerned from her findings." Pl.'s Resp. at 14. But nothing in either *Campbell* or general administrative law principles require such granularity in the Debarring Official's explanation. Indeed, with twenty nonexclusive factors to weigh, *see* 2 C.F.R. § 180.860, requiring a debarring official to specify exactly how much weight she gave each factor and why she weighed them exactly as she did would impose an unreasonable if not impossible burden on debarring officials. Weighing these factors, and any other factors that may be relevant to the situation at hand, comes down to sound judgment, not formulae.

**D.**    **Frech's Assertion That She Has Reasonable Grounds to Disagree With the Debarring Official's Assessment of Her Culpability is Irrelevant**

Under the APA, an agency's reasoning is not arbitrary or capricious simply because the agency could have reached a different conclusion. *See* Defs.' Mem. at 23-24 (collecting citations for this proposition). Oftentimes, more than one conclusion may be reasonable, so the mere fact that the agency reasonably could have reached a different conclusion does not make the conclusion that it did reach arbitrary or capricious. *Id.* It was not arbitrary or capricious for the Debarring Official to find that Frech's misconduct was knowing and intentional. *See supra* § I.A. It thus does not matter whether, as Frech asserts, she has reasonable grounds to argue that her misconduct was only reckless. The Debarring Official simply was not required to defer to Frech on this point.

The same is true as to the University of Utah ("Utah")'s misconduct findings. Because the Debarring Official's finding that Frech's misconduct was knowing and intentional is not arbitrary or capricious, it does not matter whether Utah's finding that Frech was reckless was unreasonable. As previously explained, Defendants were not required to defer to the Utah's findings. *See* Defs.' Mem. at 24. In any event, the Debarring Official reasonably explained why she reached a different conclusion than Utah as to Frech's level of culpability: Defendants considered additional evidence that Utah did not address. *Id.* at 25-27. Frech tellingly ignores this point entirely in her opposition.

**II.    Defendants' Failure to Examine Ward Does Not Preclude Debarring Frech**

At the threshold, Frech's argument about the Office's failure to examine Diane Ward shifts from her summary judgment motion to her reply.[2] In her motion, she argued that the failure to

---

[2]    Formally, the Office does not "investigate" anyone. Institutions conduct their own research misconduct investigations, and the Office then reviews those institutions' findings. *See* 42 C.F.R. § 93.403. Defendants misspoke in their prior use of the "investigate" nomenclature (although this does not bear on the merits of the parties' dispute). For simplicity, Defendants refer to the Office's review of an institution's misconduct findings against a person as an examination of that person.

examine Ward precludes a finding of sole responsibility for her misconduct. *See* Pl.'s Mem. at 31-36. But Frech switches gears in her reply, arguing that the failure to examine Ward means that her own misconduct is not really serious and compelling—a different argument. *See* Pl.'s Resp. at 15. Having failed to raise the latter of these arguments in her summary judgment motion, Frech cannot raise it for the first time in her reply. *See, e.g.*, *Cullen v. Dep't of Homeland Sec.*, Civ. A. No. 20-0113 (TJK), 2023 WL 5607425, at *3 (D.D.C. Aug. 30, 2023) ("to preserve a summary-judgment argument, a party must assert it in its opening brief"); *Nippon Shinyaku Co. v. Iancu*, 369 F. Supp. 3d 226, 240 (D.D.C. 2019) ("Arguments raised for the first time in a reply brief are waived."); *Oceana, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 72 (D.D.C. 2014) ("a plaintiff's failure to raise arguments or theories in its motion for summary judgment results in waiver of those arguments").

Regardless, as Defendants already have explained, the Office's decision to not examine Ward is committed to agency discretion, and thus unreviewable. *See* Defs.' Mem. at 29; *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1231 (D.C. Cir. 1996) (agency's "decision whether to investigate a particular matter is an agency action committed to agency discretion by law" (cleaned up)); *ExxonMobil Oil Corp. v. FERC*, No. 06-1273, 2007 WL 2306949, at *1 (D.C. Cir. July 27, 2007) (agency's "decision not to investigate . . . is committed to agency discretion and therefore not judicially reviewable"); *Voth v. Holder*, 373 F. App'x 78 (D.C. Cir. 2010) (same); *Saunders v. Davis*, Civ. A. No. 15-2026 (RC), 2016 WL 4921418, at *7 n.8 (D.D.C. Sept. 15, 2016) (agency's "decision not to investigate was committed to agency discretion" (quotation marks omitted)); *In re Watson*, 910 F. Supp. 2d 142, 147 (D.D.C. 2012) (agency's "decision . . . not to investigate" is "committed to agency discretion"); *see also Kisser v. Cisneros*, 14 F.3d 615, 620 (D.C. Cir. 1994) (a "decision not to initiate debarment proceedings against certain [ ] employees is unreviewable").

Frech cannot evade this rule by arguing that "while an agency's decision not to investigate is, in general, essentially non-reviewable, an agency's decision not to investigate may be reviewed if there is an abdication of its regulatory function." Pl.'s Resp. at 17. That exception is narrow; it applies only "where the agency had consciously and expressly adopted a general policy that was so extreme as to amount to an abdication of its statutory responsibilities." *Kisser*, 14 F.3d at 620. (quotation marks omitted). That plainly is not the case here, as the very choice to examine Frech makes clear. Frech essentially argues that "there is an abdication of [ ] regulatory authority," Pl.'s Resp. at 17, any time that an agency does not examine anyone. Such a sweeping exception would swallow the rule altogether. *Kisser* precludes Frech's argument, as it permits judicial review of a decision to not examine a person only if an agency has adopted a policy of examining nobody.

In any event, Defendants provided a legitimate reason for the decision to examine Frech but not Ward: Utah made a formal misconduct finding against Frech but not against Ward. Thus, there simply were no research misconduct findings against Ward for Defendants to review. Frech's assertion that Utah made a misconduct finding against Ward is simply false. Utah's Investigating Committee "conclude[d] that misconduct was committed by Dr. De Domenico" (De Domenico is Frech's maiden name). AR 966. It made no such finding as to Ward, and indeed, emphasized that "Ward was not a respondent of this investigation." AR 968. Although the Investigating Committee found that Ward "performed unacknowledged splicing of western blot images, some of which were obvious in the figures," *id.*, that is not the same thing as a formal finding of research misconduct. Further, Frech appealed the Investigating Committee's research misconduct finding against her, and Utah's Consolidated Hearing Committee Panel then made a formal determination that Frech engaged in research misconduct, but made no similar determination as to Ward. AR 4050. That

plainly is "a legitimate reason" for the decision to examine Frech but not examine Ward, which is all that the APA requires. *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005).

Last, to the extent that Frech makes similar arguments about Jerry Kaplan, those arguments fail for the same reasons. The decision to not examine him is unreviewable. And there was a valid reason to examine Frech but not Kaplan: Utah made no misconduct finding for him. AR 966, 4050.

## III.  The Debarring Official's Determination that Frech's Misconduct Was Sufficiently <u>"Serious and Compelling" to Warrant Debarment is Not Arbitrary or Capricious</u>

In moving for summary judgment, Defendants explained at length the numerous reasons for the Debarring Official's finding that Frech's misconduct was knowing and intentional. *See* Defs.' Mem. at 31-33. Frech's only response is to note the time gap between her misconduct and her debarment. *See* Pl.'s Resp. at 18. Defendants have explained why this time gap does not make Frech presently responsible. For the same reasons, it is irrelevant to how serious and compelling her misconduct is. *See* Defs.' Mem. at 32-33. How long it took for Frech to confront accountability for her misconduct has no logical relationship to how serious and compelling her misconduct is.

## IV.  <u>The Privacy Act Precludes APA Relief Because It Provides an Adequate Remedy</u>

The argument that the Privacy Act precludes Frech's claims properly is before this Court on summary judgment. Frech's arguments that the Privacy Act does not bar her claims lack merit.

### A.  The Argument that the Privacy Act Bars Relief Properly is Before this Court

Defendants' argument that the Privacy Act precludes Frech's claims properly is before this Court on summary judgment. It is well-settled that a court can grant or deny summary judgment on the ground that a plaintiff's claim is legally insufficient. *See Douglass v. First Nat. Realty Corp.*, 437 F.2d 666, 669 (D.C. Cir. 1970) ("matters of law rather than of fact" are fit for resolution on "a motion for summary judgment"); *Haneke v. Sec'y of Health, Ed. & Welfare*, 535 F.2d 1291, 1294 (D.C. Cir. 1976) ("The District Court granted summary judgment for defendants, stating that 'the

complaint fails to state a claim upon which relief can be granted'"); *Gabriel v. Corr. Corp. of Am.*, 211 F. Supp. 2d 132, 140 (D.D.C. 2002) ("Failure to state a claim or to allege a prima facie case can serve as bases for granting a summary judgment motion."); *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 116 (D.D.C. 2013) (a plaintiff "is not entitled to summary judgment on an allegation that does not state a claim for relief"); *Nat'l R.R. Passenger Corp. v. ERC Frankona Ruckversicherungs-AG.*, Civ. A. No. 03-2420, 2005 WL 4708212, at *1 (D.D.C. June 24, 2005) ("The issue raised by the present motion is a pure question of law . . . As such, summary judgment is appropriate."); *Johnson v. D.C. Metro. Police Dep't*, Civ. A. No. 97-0094 (PLF), 1999 WL 1105286, at *1 (D.D.C. Nov. 30, 1999) (granting summary judgment for failure to state a claim); *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 223 (3d Cir. 2015) ("In a summary judgment context, the failure to state a claim is the functional equivalent of the failure to raise a genuine issue of material fact"); *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992) (same); *Blum v. Morgan Guar. Tr. Co. of N.Y.*, 709 F.2d 1463, 1466 (11th Cir. 1983) ("A motion for summary judgment may be made solely on the basis of the complaint, in which case the motion is to be treated as the functional equivalent of a motion to dismiss for failure to state a claim"); 5B Wright & Miller, *Federal Practice & Procedure* ("Wright & Miller") § 1357 (4th ed. updated May 2025) ("a post-answer Rule 12(b)(6) motion is untimely and the cases indicate that some other vehicle, such as a motion for judgment on the pleadings or summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief at that point" (citation omitted, collecting citations)).

The idea that summary judgment is appropriate because a claim is legally insufficient flows directly from Federal Rule of Civil Procedure 56's text. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect

the outcome of the suit under the governing law.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It necessarily follows from the standard set forth in the rule that when the only issues to be decided in the case are issues of law, summary judgment may be granted." 10A Wright & Miller § 2725. "For example, if the only issues that are presented involve the legal construction of statutes . . . or the legal sufficiency of certain documents, summary judgment would be proper." *Id.* (citation omitted, citing cases). If a plaintiff's claim is legally insufficient, then no dispute of fact possibly could "affect the outcome of the suit under the governing law," *Steele*, 535 F.3d at 692, so any dispute of fact is immaterial.

Indeed, judges in this District frequently construe untimely motions to dismiss for failure to state a claim under Rule 12(b)(6) as Rule 56 motions for summary judgment while performing the same analysis. *See, e.g.*, *Flete-Garcia v. Marshals Serv.*, Civ. A. No. 18-2442 (RDM), 2021 WL 1148796, at *1 n.1 (D.D.C. Mar. 24, 2021) (defendant "filed an answer to the complaint prior to filing the motions, foreclosing dismissal pursuant to Federal Rule of Civil Procedure 12(b), so court "treats the pending motion as one for summary judgment" (cleaned up)); *Jones v. Dep't of Just.*, 111 F. Supp. 3d 25, 29 (D.D.C. 2015), *aff'd*, No. 15-5246, 2017 WL 3895064 (D.C. Cir. July 14, 2017) (plaintiff moved to dismiss "after a responsive pleading has been made . . . the Court finds that Defendants' motion should be construed as a motion for summary judgment"); *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 46 (D.D.C. 2008) (same).

Rule 12(b), which provides that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed," is not to the contrary. Although a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a summary judgment motion predicated on a claim's legal insufficiency both assert that the challenged claim fails as a matter of law, there is an important difference between them, albeit a rather subtle, technical one. A summary judgment

motion is directed at the claim itself, whereas a motion to dismiss is directed only at the pleading, i.e., the complaint, that the plaintiff filed. "[A]lthough a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted addresses itself to the claim itself, the movant merely is asserting that the pleading to which the motion is directed does not sufficiently state a claim for relief." 10A Wright & Miller § 2713 (citation omitted)). Or, as then-Judge Ketanji Brown Jackson explained this distinction: "[s]tated simply, a Rule 12(b)(6) motion is 'a method of testing the sufficiency of the statement of the claim for relief,'" *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018) (quoting 5B Wright & Miller § 1349), and does not actually "relate[ ] to the *merits* of the claims in the complaint," *id.* (citing 5C Wright & Miller § 1367).

In sum, when a defendant moves to dismiss for failure to state a claim under Rule 12(b)(6), it is not, technically, disputing that the plaintiff may in theory actually have a valid claim. Rather, it is making a conceptually narrower argument: only that the plaintiff did not plead a valid claim in the pleading it filed, which does not necessarily preclude a possibility that she can file a pleading stating a claim. When a defendant moves for summary judgment on the basis that a claim is legally insufficient, in contrast, it is not merely critiquing the pleadings; it is disputing the actual existence of a valid claim. Because Rule 12(b) addresses only an attack on the pleadings—not an attack on the sufficiency of the claim itself—it is inapposite when a defendant moves for summary judgment.

Last, in the alternative, should this Court conclude that a summary judgment motion is not a proper vehicle to argue that the Privacy Act precludes Frech's claims, it should do what judges in this District typically do in similar circumstances: construe this motion as one for judgment on the pleadings under Rule 12(c), rather than simply ignore the argument. There is no dispute that a Rule 12(c) motion is a proper vehicle to raise a failure to state a claim argument. *See* Pl.'s Resp. at 19; Fed. R. Civ. P. 12(h)(2)(B); *see also Vaughan v. Cap. City Protective Servs. II*, Civ. A. No. 20-

2932 (RC), 2025 WL 275705, at *3 (D.D.C. Jan. 23, 2025) ("Under the circumstances, the Court

will construe" an untimely Rule 12(b)(6) motion "as a motion for judgment on the pleadings under

Rule 12(c)," as "[t]he standard under both rules is virtually identical"); *Lockhart v. Coastal Int'l

Sec., Inc.*, 905 F. Supp. 2d 105, 112 (D.D.C. 2012) ("the Court construes the alternative basis for

the defendant's motion to be a motion for judgment on the pleadings"); *Langley v. Napolitano*, 677

F. Supp. 2d 261, 263 (D.D.C. 2010) ("courts routinely treat motions to dismiss that are filed after

a responsive pleading has been made as a motion for judgment on the pleadings" (citing cases)).

### B.    The Privacy Act Precludes Frech's Claims

The Privacy Act offers an "adequate remedy in a court" for Frech's claims, thus precluding

APA relief. 5 U.S.C. § 704. The Privacy Act allows a plaintiff to "request amendment of a record

pertaining to [her]," and requires an agency either to make the requested correction or to "clearly

note any portion of the record which is disputed." 5 U.S.C. § 552a(d)(2)(B), (d)(4). It also requires

an agency to "maintain all records which are used by the agency in making any determination

about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably

necessary to assure fairness to the individual in the determination," and, "prior to disseminating

any record about an individual to any person other than an agency," to "make reasonable efforts

to assure that such records are accurate, complete, timely, and relevant for agency purposes" (other

than in response to a Freedom of Information Act request). *Id.* § 552a(e)(5)-(6). Last, it creates a

cause of action to enforce these requirements through injunctive relief, damages, attorney's fees,

and costs. *Id.* § 552a(g)(1)(A), (g)(1)(C), (g)(2)(A)-(B), (g)(4)(A)-(B). The Privacy Act thus offers

both "an independent cause of action" and "an alternative review procedure." *El Rio Santa Cruz

Neighborhood Health Ctr. v. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005).

Indeed, the D.C. Circuit squarely has held that the Privacy Act is an "adequate remedial

mechanism[ ]" precluding a *Bivens* action in the context of "reputational debarment claims," even

though a plaintiff "could not challenge [her] debarment under the Privacy Act." *Liff v. Off. of Inspector Gen.*, 881 F.3d 912, 918, 921 (D.C. Cir. 2018). Frech tries to distinguish *Liff* in two ways, neither persuasive. First, she emphasizes that the plaintiff's claim there "was not a challenge to his debarment," Pl.'s Resp. at 21, but as the foregoing language makes clear, *Liff*'s reasoning applies to a debarment claim. Indeed, the plaintiff there both asserted "reputational harm" and argued that the challenged actions "interfered with [his] right to pursue his chosen profession," including "through *de facto* debarment." *Liff*, 881 F.3d at 917. These are the exact same harms that Frech asserts. If the Privacy Act was adequate to address these harms in *Liff*, then it is adequate to address Frech's harms. Second, Frech notes that *Liff* involved a *Bivens* claim rather than an APA claim, but as Defendants have explained, the *Bivens* doctrine's "adequate remedial mechanisms" inquiry, *id.* at 918, is similar to the APA's "other adequate remedies" inquiry, 5 U.S.C. § 704; *see also Thomas v. Fed. Aviation Admin.*, Civ. A. No. 05-2391 (CKK), 2007 WL 219988, at *3 (D.D.C. Jan. 25, 2007) (equating *Bivens* doctrine's adequate remedy inquiry with APA's adequate remedy inquiry); *M Nicolas Enters., LLC v. United States*, No. 20-691C, 2022 WL 558043, at *3 (Fed. Cl. Feb. 23, 2022) ("As with APA claims, *Bivens* claims are unavailable where alternative remedies exist."). Frech tries to distinguish *Thomas* on its facts, but *Thomas* simply illustrates that the inquiry into whether an adequate alternative remedy exists, thus precluding relief, is similar in both the *Bivens* and APA contexts. And tellingly, Frech makes no attempt to distinguish *M Nicolas* whatsoever.

Finally, Frech's reliance on cases involving APA challenges to debarments, *see* Pl.'s Resp. at 21-22, fails for a simple reason: those cases did not address the issue of whether the Privacy Act constitutes an adequate remedy under the APA. *See Darby v. Cisneros*, 509 U.S. 137 (1993); *Burke*, 127 F. Supp. 2d 235; *Friedler v. GSA*, 271 F. Supp. 3d 40 (D.D.C. 2017); *Campbell*, 2020 WL 6445874. "Questions which merely lurk in the record, neither brought to the attention of the court

nor ruled upon, are not to be considered as having been so decided as to constitute precedents."

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266

U.S. 507, 511 (1925)); *see also Bismullah v. Gates*, 551 F.3d 1068, 1071 (D.C. Cir. 2009) ("The

question . . . was not presented, granted, or briefed and the Court had no occasion to decide it").

**V.    <u>Frech is Not Entitled to Injunctive Relief</u>**

Should this Court find that the Debarring Official erred in imposing Frech's debarment,

the only appropriate remedy is remand, and, potentially, vacatur.[3] This case is not an exception to

the general rule that injunctive relief is not the appropriate remedy under the APA for an erroneous

agency action. And regardless, Frech fails to establish any of the requirements for injunctive relief.

**A.    Vacatur is the Only Proper Remedy for an Erroneous Debarment**

"Vacatur is the normal remedy when [a court is] faced with unsustainable agency action."

*N.J. Conservation Found. v. FERC*, 111 F.4th 42, 63 (D.C. Cir. 2024) (quotation marks omitted).

"Only in rare cases, when the reviewing court is convinced that remand would serve no purpose,

does the court direct the agency how to resolve a problem." *Allina Health Servs. v. Sebelius*, 746

F.3d 1102, 1111 n.6 (D.C. Cir. 2014). That is the case where only "one disposition is possible as

a matter of law." *Fisher v. Pension Benefit Guar. Corp.*, 994 F.3d 664, 669 (D.C. Cir. 2021).

This is not such a case. Even assuming, just for argument's sake, that the Debarring Official

erred in determining that Frech failed to demonstrate present responsibility, that would not mean

that finding Frech to be presently responsible is the only result that the Debarring Official possibly

---

[3]    Should this Court conclude that any errors in the challenged action are ones that Defendants likely could correct on remand, the Court should remand without vacatur. *See Allied-Signal, Inc. v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) ("The decision whether to vacate depends on the seriousness of the orders deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."); Min Order (Mar. 8, 2024) (same). If it would be helpful, the Court could identify any errors that it finds and Defendants could file supplemental briefing on whether vacatur is proper.

could reach. To the contrary, "debarment decisions are inherently ad hoc, fact-dependent exercises in which the individual [debarring officials] are given considerable discretion." *Legion Constr.*, 310 F.R.D. at 4. As such, even assuming that the Debarring Official erred in her analysis, she still "could reach the same result" under a correct analysis of the relevant factors. *Allina Health*, 746 F.3d at 1111; *see also Fed. Food Serv., Inc. v. Donovan*, 658 F.2d 830, 834 (D.C. Cir. 1981) ("The cause is remanded to the district court with directions to vacate the debarment. Leave may be granted to the Secretary, however, to reinstate appellants' names on the list of debarred bidders upon reopening the record and making satisfactory findings consistent with this opinion."); *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947) ("After the remand was made, therefore, the [agency] was bound to deal with the problem afresh, performing the function delegated to it by Congress.").

Frech's counterarguments are meritless. Frech argues that a remand "would only offer the agency yet another opportunity to rationalize why [she] is not presently responsible and remains a risk to the public funds." Pl.'s Resp. at 22. But providing an agency another opportunity to address the disputed matter in the first instance is what D.C. Circuit precedent requires. *See Allina Health*, 746 F.3d at 1111. It is not a reason to reject remand; to the contrary, it is what ordinarily is supposed to happen. Frech further argues that "Defendants have offered no other reason, aside from [Frech's] refusal to admit knowing and intentional misconduct that would support the Debarring Official's finding of non-responsibility." Pl.'s Resp. at 22. But the Debarring Official had no reason to offer alternative reasons for determining that Frech failed to demonstrate present responsibility, as she found that Frech's refusal to acknowledge the seriousness of her misconduct was sufficient to find that she failed to show present responsibility. Should the Court find this to be error, the Debarring Official would revisit the issue and determine whether Frech has shown present responsibility, but this time without holding against Frech her assertion that her misconduct was merely reckless.

**B.** **Frech Fails to Satisfy Any of the Requirements for Injunctive Relief**

Regardless, Frech fails to establish irreparable harm absent an injunction, an inadequate remedy at law, or that the balance of equities or public interest favor injunctive relief.

   1. <u>Frech Fails to Establish Irreparable Injury or an Inadequate Remedy at Law</u>

At the threshold, Frech tellingly offers no response to the observation that her injuries are self-inflicted, and thus, not irreparable as a matter of law. *See* Defs.' Mem. at 43-44. For that reason alone, Frech fails to demonstrate irreparable injury, so this Court need not address the issue further. Regardless, neither her reputational injury nor her loss of employment support injunctive relief.

*First*, Frech fails to show that an injunction would redress any reputational harm that she has experienced. As Defendants have explained, an injunction cannot undo any reputational harm to Frech because the Office already has published its misconduct findings against her in the Federal Register, and the findings are in this case's public docket. *See* Defs.' Mem. at 42. Thus, "no order of this Court can avert the risk that people in [Frech's] field may discover that Federal Register entry" or this case's docket "and view [her] as someone who is unworthy of employment." *Brodie v. Dep't of Health & Hum. Servs.*, 715 F. Supp. 2d 74, 85 (D.D.C. 2010) (quotation marks omitted).

"Any harm resulting from such publication [thus] cannot be repaired by [Frech's] requested remedy." *Garcia v. City of Laredo*, Civ. A. No. 14-0140, 2014 WL 11531843, at *1 (S.D. Tex. Sept. 12, 2014); *see also Usherson v. Bandshell Artist Mgmt.*, Civ. A. No. 19-6368, 2020 WL 4228754, at *2 (S.D.N.Y. July 22, 2020) ("to the extent that awareness of [certain facts] will cause . . . reputational [ ] harm, much of that harm has already occurred"); *Fla. Coastal Sch. of L., Inc. v. Am. Bar Ass'n*, Civ. A. No. 18-0621, 2018 WL 9392564, at *6 (M.D. Fla. July 9, 2018) ("[T]his information is already published and available to the public and has been for nearly two months. . . . to remove this information from its website will not undo whatever harm it claims has already occurred"); *Bollea v. Gawker Media, LLC*, Civ. A. No. 12-2348, 2012 WL 5509624, at *4 (M.D.

Fla. Nov. 14, 2012) ("the proverbial 'cat is out of the bag,' rendering injunctive relief ineffective"). Tellingly, Frech offers no response to this point at all. Frech argues only that she has experienced reputational harm, which is undisputed, without showing that an injunction could undo that harm.

*Second*, Frech fails to show that any loss of employment constitutes irreparable injury. As Defendants have explained, loss of employment generally does not constitute irreparable injury as a matter of law, and Frech offers no reason why this case is an exception to that rule. *See* Defs.' Mem. at 39-40. She does not argue, much less show, that she cannot find a job at all. *Id.* at 40. She argues only that her debarment precludes her from working for a single employer, the University of Iowa. Indeed, she acknowledges that she has a Master's Degree in Business Administration that she can use to work in any number of "business administration contexts," arguing only, in essence, that she does not want to; she only wants her old job at the University of Iowa. Pl.'s Resp. at 24. If the rule that loss of employment alone does not constitute irreparable injury means anything, it means Frech's inability to regain one specific job at the University of Iowa is not irreparable injury. *See My Fav Elecs., Inc. v. Currie*, Civ. A. No. 24-1959, 2024 WL 4528330, at *17 (N.D. Ill. Oct. 18, 2024) (preventing one "from performing a specific kind of work for a specific employer does not prevent her from earning a living") (cleaned up)); *Beberman v. Blinken*, Civ. A. No. 23-0036, 2023 WL 5836059, at *3 (D.V.I. Sept. 8, 2023) (loss of "a particular job opportunity" is not irreparable harm). That is especially so given that, as Defendants have explained, nothing in the record suggests that Frech's old job even remains available or that the University of Iowa would still rehire her today if this Court vacates her debarment. *See* Defs.' Mem. at 41-42. Defendants made these points in seeking summary judgment, *id.* at 39-42, yet Frech tellingly has no response.

          2.    <u>Frech Fails to Demonstrate that the Equities or Public Interest Favor Her</u>

Finally, the balance of equities and public interest do not favor injunctive relief. Where, as here, a plaintiff fails to establish success on the merits, irreparable harm absent an injunction, or

an inadequate remedy at law, the equities and public interest alone cannot merit an injunction. *See* Defs.' Mem. at 44 (citing cases). In any event, Defendants' "compelling interest in enforcing the debarments of [persons] who have properly been found presently irresponsible," *Campbell*, 2020 WL 6445874, at *14, outweighs Frech's interest in vacating her debarment, *see supra* § V.B.1.

## CONCLUSION

For the foregoing reasons, and those in Defendants' cross-motion for summary judgment, this Court should grant Defendants summary judgment.

Dated: July 28, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____*/s/ Bradley G. Silverman*_____
     BRADLEY G. SILVERMAN
     D.C. Bar #1531664
     Assistant United States Attorney
     601 D Street NW
     Washington, DC 20530
     (202) 252-2575
     bradley.silverman@usdoj.gov

     *Attorneys for the United States of America*